810 P.2d 808

**Charles ROMERO, Plaintiff–Appellee,**

v.

**Richard V. EARL, Defendant–Appellant.**

**No. 18952.**

Supreme Court of New Mexico.

May 1, 1991.

Richard V. Earl, Albuquerque, for defendant-appellant.

Wendy E. York, Albuquerque, for plaintiff-appellee.

OPINION

RANSOM, Justice.

Dr. Charles Romero, a chiropractor, sued attorney Richard Earl in metropolitan court for $2,339.82 pursuant to a "Doctor's Lien" against settlement proceeds in a worker's

compensation case. The instrument sued upon, signed by the worker, Jesus Rascón, and his attorney, Earl, authorized Romero to release to Earl medical information on Rasón's condition and directed Earl to pay from proceeds of the lawsuit directly to Romero whatever sums may be due and owing him for medical services rendered by reason of the accident. When Earl later received $5,000 in settlement proceeds, he paid the entire sum directly to Rasón upon the latter's instructions.

In response to Romero's complaint, Earl answered and asserted two affirmative defenses: (1) The contract sued upon was void for lack of consideration, and (2) the lien was illegal. The metropolitan court entered an order granting summary judgment in favor of Earl, and Romero appealed to the district court. On the record for review the district court reversed the decision of the metropolitan court and remanded the case for a hearing on its merits. Earl appeals, raising anew his affirmative defenses.

*Obligor's duty to assignee.* We agree with Romero that by virtue of the Doctor's Lien,[1] Earl became obligated to distribute the proceeds of Rascón's claim in accordance with the writing, and that duty gave rise to an enforceable right in favor of Romero.

The writing was an assignment to Romero of Rascón's right to the proceeds of the award.[2] *See S & W Trucks, Inc. v. Nelson Auction Serv., Inc.,* 80 N.M. 423, 457 P.2d 220 (Ct.App.1969) (language of assignment need not be formal, rather it need only manifest an intention on part of owner to transfer a right or interest in property); 4 A. Corbin, *Corbin on Contracts* § 879 (1951) (same). Earl, as obligor[3] with notice of the assignment, was required to pay the assignee. *Id.* § 890. The obligor is liable to the assignee if the funds assigned subsequently are paid to the assignor in violation of the assignment. *Bonanza Motors, Inc. v. Webb,* 104 Idaho 234, 236, 657 P.2d 1102, 1104 (Ct.App.1983).

■ Rascón's purported unilateral revocation of the assignment did not discharge

---

**1.** The writing provided:

DOCTOR'S LIEN
Attorney: Richard Earl  Patient: Jesus Rascón
. . .
RE: Patient records and doctor's lien:
I do hereby authorize <u>Dr. Charles Romero</u> to furnish you, my attorney, with a full report of his examination, diagnosis, treatment, prognosis, etc., of myself in regard to the accident in which I was involved.
I hereby authorize and direct you, my attorney, to pay directly to said doctor such sum as may be due and owing him for medical service rendered me both by reason of this accident and by reason of any other bills that are due his office and to withhold such sums from any settlement, judgment or verdict. I hereby further give a lien on my case to said doctor against any and all proceeds of my settlement, judgment, or verdict which may be paid to you, my attorney, or myself as the result of the injuries for which I have been treated or injuries in connection therewith.
I fully understand that I am directly and fully responsible to said doctor for all medical bills submitted by him for service rendered me and that this agreement is made solely for said doctor's additional protection and in consideration of his awaiting payment. And I further understand that such payment is not contingent on any settlement, judgment, or verdict by which I may eventually recover said fee.

Please acknowledge this letter by signing below and returning to the doctor's office. I have been advised that if my attorney does not wish to cooperate in protecting the doctor's interest the doctor will not await payment but will require me to make payments on a current basis.
Dated: <u>7/16/86</u>        <u>/s/ Jesus Rascón</u>
                               Patient's Signature
The undersigned being attorney of record for the above patient does hereby agree to observe all the terms of the above and agrees to withhold such sums from any settlement, judgment, or verdict as may be necessary to adequately protect said doctor named above.
Dated: <u>July 22, 1986</u>     <u>/s/ Richard Earl</u>
                               Attorney's Signature

**2.** The legality of the assignment was questioned only under language of the Workers' Compensation Act, as discussed below. The parties did not raise, brief, or argue the assignability of the prospective proceeds of a common-law claim for personal injury. Consequently, we neither consider nor by implication pass upon the latter question.

**3.** It is fundamental that Earl, as attorney for Rascón, owed a duty to his client to account for any funds received in the course of legal representation, and to pay the client any sums to which he may be entitled. *Bonanza Motors, Inc. v. Webb,* 104 Idaho 234, 236, 657 P.2d 1102, 1104 (Ct.App.1983).

Earl's duty. As ably argued by Romero in his answer brief, once an attorney has accepted from his client an assignment of settlement proceeds to the client's creditor, the client, as assignor, cannot cancel or modify the assignment by unilateral action without the assent of the assignee, nor may he defeat the rights of the assignee. *See Martinez v. Martinez*, 98 N.M. 535, 538, 650 P.2d 819, 822 (1982) (assignment of rights to child support); *Bonanza Motors*, 104 Idaho at 236, 657 P.2d at 1104 (partial assignment of interest in funds to be received from a lawsuit against insurance company). Under such circumstances, a lawyer is not ethically bound to give the client more than the sum to which the client is entitled, nor is the client entitled to receive the funds promised to the creditor. *Id.*

■ *Adequacy of consideration.* Earl contends that his obligation to Romero was unsupported by consideration.[4] Consideration adequate to support a promise is essential to enforcement of the contract and must be bargained for by the parties. *Knoebel v. Chief Pontiac*, 61 N.M. 53, 57, 294 P.2d 625, 627–28 (1956). Something is bargained for "if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Restatement (Second) of Contracts* § 71 (1979); *see also Restatement (Second) of Contracts* § 79 (1979) (if the requirement of bargained for consideration is met, there is no further requirement of a benefit to the promisor or a detriment to the promisee).

We note that this is not a case in which an attorney is expressly or impliedly liable for the unpaid fees of consultants or other experts the attorney has retained on behalf of the client. Here, Romero was paid $732.83 for the preparation and giving of his deposition, and an additional $629.28 as his fee at trial. He also was paid $8.50 toward a total of $11.00 for providing copies of charts. His claim for $2,339.82 does not purport to include litigation-related fees, other than treatment of Rascón's injuries.

■ In response to Earl's motion for summary judgment in the metropolitan court, Romero filed an affidavit stating that consideration for the Doctor's Lien included his assurances that Rascón would continue to receive medical treatment, that Earl would receive current and reliable information on Rascón's medical status, and that Romero would be available as a consultant and witness in aid of Rascón's claim. Further, Romero argues that forbearance from collecting fees for treating Rascón constituted consideration. Based solely on that affidavit, we think Romero has raised material questions of fact concerning the consideration for the assignment by Rascón.

In addition, Romero has tendered sufficient evidence that, under the law of contracts and the acceptance of an assignment, there were at the very least genuine issues of material fact regarding the intent of the parties and the essential terms of the agreement.

■ *Illegality.* A more novel issue is presented by the illegality defense. The Workers' Compensation Act applicable here included a provision that:

> Compensation benefits shall be exempt from claims of creditors and from any attachment, garnishment or execution and shall be paid only to such workman or his personal representative or such other persons as the court may, under the terms hereof, appoint to receive or collect compensation benefits.

NMSA 1978, § 52–1–52(A) (Repl.Pamp. 1987) (amended 1989).

We believe that a meritorious claim of illegality may be raised by a worker with respect to the settlement proceeds of the worker's compensation claim in the event

---

**4.** Because the parties neither raised, briefed, nor argued the question, and because we think Romero has tendered sufficient evidence of consideration, we do not profess to resolve today whether consideration is required to support either legal or equitable assignments. *See Bank* *of California v. Connolly*, 36 Cal.App.3d 350, 366–67, 111 Cal.Rptr. 468, 479 (1974) (discussing common-law distinctions between legal and equitable assignments and operative consideration requirements); *Brager v. Blum*, 49 B.R. 626, 629 (E.D.Pa.1985) (same, Pennsylvania law).

his or her attorney should withhold for medical providers any sums not received by the attorney for that specific purpose. Such a claim also may be raised should a medical provider seek to attach, garnish, or execute on settlement proceeds that do not include a specific sum to be paid the medical provider. In the instant case, however, the medical provider is not simply pursuing the compensation benefits to collect a medical bill. He has sued the attorney on the latter's signature to Rascón's assignment, by which both agreed to the payment from proceeds of the lawsuit directly to Romero of whatever sums may be due and owing him for medical services. The rights of the assignee otherwise having attached as discussed above, the question becomes whether the assignor may defeat those rights by unilaterally canceling the assignment in reliance upon the exemption of Section 52–1–52(A). We think not.

By its terms, the exemption applies to "claims of creditors" and to "any attachment, garnishment or execution." It does not address assignments. If the legislature had intended a "spendthrift" provision that would preclude the assignment of all or part of the proceeds before received, such a provision readily could have been articulated.[5] Here, when Earl accepted an assignment of settlement proceeds to the creditor of his client, we believe he became obligated to the assignee.[6] The decision in this case stands on the law of contracts and assignments irrespective of the relationship of the creditor to Rascón's compensation claim.

■ *Attorney fees and costs.* Without citation to authority, Romero requests attorney fees on appeal. Attorney fees may be awarded for appellate services "where the award of attorney fees is permitted by law." SCRA 1986, 12–403(B)(3). Romero has directed us to no statute authorizing attorney fees in this action, nor are we aware of any such statute. Accordingly, his request for attorney fees on appeal is denied. Nevertheless, Romero is entitled to his costs, if any, on appeal. SCRA 1986, 12–403.

We affirm the order of the district court in its entirety and we remand to metropolitan court for proceedings consistent with this opinion.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.

---

5. We gather additional support for our conclusion from examination of the workers' compensation acts of other states. In addition to the exemption from involuntary alienation by way of legal process found in nearly every act, many states have incorporated spendthrift provisions, prohibiting assignment of proceeds, into their workers' compensation acts. *See, e.g.,* N.Y. Work.Comp.Law § 33 (Consol.1982) (compensation or benefits shall not be assigned, released or commuted except as provided in the act nor shall benefits be subject to claims of creditors, levy, execution and attachment); Tex.Rev.Civ. Stat.Ann. art. 8308–4.07 (Vernon 1991) (benefits neither assignable nor subject to garnishment, attachment, judgment, and other actions or claims); Wash.Rev.Code § 51.32.040 (1989) (no money paid under act shall be assigned, charged or ever taken in execution or attached or garnished). We are satisfied that our legislature could have included similar language had it so intended. *E.g.,* NMSA 1978, § 51–1–37(C) (Repl.Pamp.1987) (assignment of rights to unemployment compensation benefits void as well as exempt from levy, execution, attachment, etc.).

6. Romero argues, in the alternative, that Section 52–1–52(A) does not apply to medical providers for whose services a worker may be entitled to payment under the Workers' Compensation Act. While we need not decide that issue, we note here that we cannot agree with respect to a settlement that does not earmark medical payments. Nothing in the Act leads us to believe the legislature intended to except claims of medical providers from the exemption provision. *See Advance Loan Co. v. Kovach,* 79 N.M. 509, 512, 445 P.2d 386, 389 (1968) (exemption statutes liberally construed in favor of debtor).