833 P.2d 235

**In the Matter of Charles W. RAWSON An Attorney Suspended from Practice Before the Courts of the State of New Mexico.**

No. 15897.

Supreme Court of New Mexico.

June 1, 1992.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, Edward L. Chavez, Asst. Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Charles W. Rawson, pro se.

## OPINION

PER CURIAM.

This matter comes before the Court in two separate disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 to –316 (Repl.Pamp.1991), in which attorney Charles W. Rawson was found to have committed numerous violations of the Rules of Professional Conduct, SCRA 1986, 16–101 to –805 (Repl.Pamp.1991). Pursuant to Rule 17–207(B) of the Rules Governing Discipline, on June 27, 1991, he was summarily suspended from practice, pending the outcome of the present proceedings, due to our concern that his continued practice would pose a danger to the public. We adopt the Disciplinary Board's findings of fact and conclusions of law and agree that disbarment is the appropriate sanction under the circumstances giving rise to these proceedings.

In 1985 this Court suspended Rawson from the practice of law for, *inter alia,* failure to maintain a trust account, but deferred the imposition of suspension and placed him on probation under certain terms and conditions. *Matter of Rawson,* 103 N.M. 166, 704 P.2d 78 (1985). Since it appeared from the evidence presented in that case that Rawson did not maintain a trust account, one condition of his probation was that he create and maintain such an account and submit to and bear the

expense of two audits of the account. Another condition was that he deposit $17,500, plus interest from July 10, 1981, with the Clerk of the Court for the Second Judicial District for appropriate distribution in the case *El Syd, Inc. v. Charles W. Rawson,* Cause No. CV–84–04284, in the Second Judicial District. That lawsuit was filed by Lawrence and Ruth LaVictoire, complainants in the matter giving rise to Rawson's suspension and probation.

Rawson's probation was subsequently revoked and the period of suspension imposed by this Court upon a showing that Rawson had failed to cooperate with his supervisor or to comply with other probationary conditions. *Matter of Rawson,* 104 N.M. 387, 722 P.2d 638 (1986). He was reinstated to practice on a probationary basis in 1987 after assuring the Court that he had (during the time he was on probation) created and maintained a trust account at the First National Bank in Albuquerque in a manner satisfactory to the auditor and fulfilled all of the other previously imposed probationary conditions set out in this Court's order of 1985. *Matter of Rawson,* 106 N.M. 172, 740 P.2d 1156 (1987).

In August 1990 the office of disciplinary counsel was notified by Ida Lands, Rawson's former secretary, that prior to her resignation earlier in the year she had learned that Rawson was issuing checks against insufficient funds in a trust account that he maintained at Sunwest Bank in Albuquerque. Lands also reported that several of Rawson's clients had complained to her about Rawson's failure to forward settlement proceeds to them in a prompt fashion. She further stated, while she had personally maintained records pertaining to Rawson's trust account at the First National Bank, she had not kept any records for the Sunwest trust account.

Disciplinary counsel asked Rawson to provide records pertaining to the Sunwest account and, when none were produced, issued a subpoena to the bank for their production pursuant to Rule 17–306(A)(2). Records pertaining to the account indicated it was opened in June 1985 with a deposit

of $130,000 and showed numerous irregularities from that time until the account became inactive in June 1990 with a balance of $31.81. It appeared from the records that Rawson had commingled his own monies into the account, issued checks to clients or others for whom no monies were on deposit, issued checks against insufficient funds, and transferred monies from the trust account to his own accounts and/or used them to pay his personal debts. At the time the account became inactive, thousands of dollars were missing from the account with no conclusion possible except that they had been misappropriated or misapplied.

Additionally, disciplinary counsel learned from the clerk of this Court that Rawson had never reported the existence of his Sunwest account on forms filed with the Court pursuant to his obligations under Rule 17–204(A) of the Rules Governing Discipline. Upon checking with Rawson's probationary supervisors and the accountant who had been appointed to audit his trust account(s), counsel also learned that Rawson had never advised them of his Sunwest account.

Chief disciplinary counsel sent Rawson several detailed letters outlining the problems disclosed by the Sunwest records and inquiring into his apparent failure to report the existence of the account. He was asked to explain these matters and also to provide copies of all ledgers kept by him with respect to the account. He did not respond to either request.

At a hearing on the charges that were subsequently filed, Rawson produced nothing to substantiate his claim that records were in fact kept regarding the funds in the Sunwest account. His position was that since the clients themselves had not complained, the attorney-client privilege precluded his producing the records. We reject this position.

Because the purpose of Rule 17–204 is to insure that client funds are at all times protected while in an attorney's possession, to allow an attorney to claim confidentiality or the client's privilege to preclude the examination of these records would defeat

the entire purpose of the rule. Disclosure of these records is impliedly authorized for purposes of Rule 16–106 of the Rules of Professional Conduct through the express disclosure requirements of Rule 17–204. Nor do records of client funds meet the requirements of the evidentiary privilege. *See* SCRA 1986, 11–503(D)(3) (no privilege as to communication relevant to an issue of breach of duty by the lawyer). The privilege was never intended as a shield for attorneys to prevent scrutiny of those records to determine whether they are meeting their fiduciary and ethical responsibilities. *See In re Kennedy,* 442 A.2d 79, 92 (Del.1982). The committee's finding that Rawson failed to maintain records for his Sunwest trust account is supported by the record.

The hearing committee also found that Rawson had converted the funds of at least one client to his own use. This was accomplished by his paying himself $36,200 and diverting $44,700 of the client's $148,374.14 settlement check into the account of an entity known as Chapel Hill Corporation. Corporate records produced at the hearing indicate that Chapel Hill is a Rawson family-owned corporation. Chapel Hill's bank records show that Chapel Hill's checking account, upon which Rawson is the signatory, was used by Rawson primarily as a personal account. Rawson's mortgage payments were made from the Chapel Hill account, and numerous checks were made payable to Rawson personally. Although several checks were issued from the Chapel Hill account to the client in question, they in no way approached the amount deposited into the account from her funds.

Additionally, Rawson issued a check in the amount of $22,915.89 from the client's funds to an entity called Cibola Research and Development. Other evidence in the record establishes that this check was in payment of a loan from Cibola to Rawson personally. Thus, Rawson received at least $103,815.89 of the settlement proceeds.

The client claimed in her testimony that she is satisfied with the way her money was handled and that she agreed to pay Rawson a contingency fee of one-third of her settlement. She also stated, however, that she knew nothing of either Chapel Hill or Cibola Research and Development. Rawson's statement that he paid the client $111,400 cannot be reconciled with the client's statement that she agreed to pay him one-third of her settlement ($49,-458.04), as this would total $160,858.04. Neither can it be reconciled with the evidence that he actually paid himself $103,-815.89. If the client has in fact received $111,400, of which there is no evidence apart from Rawson's own testimony, the money came from sources other than her settlement check. The Sunwest bank records indicate that she was paid only $72,600 from that account, and that some of this money represented payments from funds belonging to other clients.

The hearing committee was correct in concluding that the above conduct violated Rules 16–115(A), 16–804(B), 16–804(C), and 16–804(H) of the Rules of Professional Conduct. By failing to report the existence of his Sunwest trust account and intentionally concealing it from this Court during previous reinstatement proceedings, Rawson also violated Rule 17–204(A) of the Rules Governing Discipline and Rules 16–801(B) and 16–804(D) of the Rules of Professional Conduct.

In his defense to the above findings and conclusions, Rawson points to Rule 17–303 of the Rules Governing Discipline, which directs that no complaint against an attorney shall be considered "unless a written complaint is filed with or initiated by chief disciplinary counsel in accordance with these rules within three years from the time the complainant knew or should have known the facts upon which the complaint was filed." Rawson contends that Ms. Lands was aware of his Sunwest account from the time of its inception and failed to file a complaint within the time provided by Rule 17–303, thus the Board could consider no transaction occurring before August 1987 (three years prior to the date the complaint was filed by Ms. Lands). Because of this, Rawson argues, the committee's findings based on conduct occurring prior to August 1987 should be stricken and that without these findings, the com-

mittee's conclusions that he committed acts of misconduct cannot stand. He requests that charges be dismissed on this basis. Rawson's argument fails for several reasons.

Rawson's conduct since 1987 regarding the Sunwest account warrants disciplinary action. Ms. Lands's complaint dealt only with irregularities in the account occurring in 1989 and 1990 and was filed in a timely fashion as to those irregularities. Also, while Ms. Lands may or may not have been aware of the existence of the Sunwest account for more than three years before she notified chief disciplinary counsel, she testified that she had not kept the records for that account and there is no evidence in the record that she was aware or should have been aware of any irregularities in the account prior to August 1987.[1]

In addition to the mishandling of client funds, in the first proceeding under consideration today Rawson was the subject of complaints filed by three Albuquerque physicians. The doctors had provided treatment to one of Rawson's clients based upon letters from Rawson promising they would be paid from the proceeds of any settlement or judgment received by the client. In July 1990 the client's personal injury claim was settled for $14,000. Rawson disbursed $4,666.67, one-third of the settlement, to himself as a fee and $3,362.09 to his client. One month later, he disbursed another $1,057.50 to himself as attorney fees. Despite repeated inquiries from two of the doctors, Rawson never advised them that a settlement had been received. When a third doctor called, Rawson replied that the case had been settled but that he could make no payments as the client was contemplating bankruptcy. Numerous letters

of inquiry were sent to Rawson by disciplinary counsel, but he failed to address allegations that he was wrongfully refusing to honor the letters of protection he had issued on behalf of his client. At the hearing Rawson produced a copy of a letter that purportedly was sent to disciplinary counsel; the hearing committee found that the letter was never received by counsel.

Rawson filed bankruptcy for his client in March 1991, listing the doctors in question and others as creditors. There was no mention made in those pleadings of the $14,000 settlement, and Rawson and his client led the bankruptcy trustee to believe that the settlement had been for only $5,000. The trustee was advised that Rawson was still holding $2,704.61 of the settlement in trust (it is not clear from the record what became of the remainder of the settlement proceeds). Rawson successfully argued that these funds should be disbursed to his client.

Rawson now claims that the $2,704.61 was placed in trust for the three doctors, but his client changed her mind and directed that their bills not be paid. However, "once an attorney has accepted from his client an assignment of the settlement proceeds to the client's creditor, the client, as assignor, cannot cancel or modify the assignment by unilateral action without the assent of the assignee, nor may he defeat the rights of the assignee." *Romero v. Earl*, 111 N.M. 789, 791, 810 P.2d 808, 812 (1991). The attorney in such a situation is obligated to distribute the proceeds of the settlement in accordance with the promise to the creditors and, as an obligor with notice of the assignment, is required to pay the assignee. *Id.* at 790, 810 P.2d at 811.

---

1. We also note that chief disciplinary counsel can, indeed has a duty to, initiate a complaint when facts come to her attention which would indicate that misconduct may have occurred. *See* Rule 17–105(C)(1). In this instance, the extent of Rawson's misconduct for the first time became apparent to chief disciplinary counsel only after records pertaining to the Sunwest account were subpoenaed from the bank and examined. A second "complaint" was then initiated by chief counsel, clearly less than three years after she became aware of the facts. The rule apparently would allow a complaint to be

filed by chief disciplinary counsel within three years of her becoming aware of the facts.

Reliance upon chief disciplinary counsel's knowledge may, in some instances, negate the purpose of the statute of limitations, *e.g.*, where the primary witness against the attorney has been aware of facts for more than three years and then comes to the office of chief disciplinary counsel. We need not, however, measure the statute of limitations from the date chief disciplinary counsel became aware of the facts. We would be ill disposed to do so.

While an attorney is obligated to follow a client's directives; this obligation does not extend to assisting the client in defrauding courts and creditors. Rawson's actions in this instance violated Rules 16–102(D), 16–804(C) and 16–804(H) of the Rules of Professional Conduct. Additionally, his failure to cooperate in any fashion with the investigation of the doctors' complaints was violative of Rules 16–801(B) and 16–803(D) of the Rules of Professional Conduct.

The second disciplinary proceeding considered today involves a separate set of charges filed against Rawson for misconduct with respect to the $17,500 plus interest he was to have deposited for distribution in *El Syd, Inc. v. Rawson*, pursuant to a condition of his 1985 disciplinary probation. Prior to his petition for readmission in 1987, *Matter of Rawson*, 106 N.M. 172, 740 P.2d 1156 (1987), Rawson had entered into a conditional agreement with the Disciplinary Board arising out of additional charges that had been brought against him. In the conditional agreement, which Rawson signed under oath, he stated that he had "deposited in trust with his attorney the amount of $25,000.00 to be paid as damages to his former clients the LaVictoires in the event his appeal of their jury verdict against him is unsuccessful." The *El Syd* litigation had reached its conclusion at the district court level, and a jury had entered a verdict against Rawson in favor of El Syd, Inc. The LaVictoires (controlling shareholders of El Syd, Inc.) had voluntarily withdrawn as parties to the litigation prior to jury deliberations. The fact that the LaVictoires personally did not have a verdict against Rawson was known to him but not to disciplinary counsel when he entered into the conditional agreement with the Disciplinary Board. Rawson's knowledge that the conditional agreement inadvertently referred to the LaVictoires rather than to El Syd Inc., was evidenced by a stipulation subsequently filed on his behalf in the United States Bankruptcy Court for the District of New Mexico. In that stipulation, Rawson acknowledged that the conditional agreement erroneously omitted El Syd, Inc.

Despite his knowledge that the monies on deposit with his attorney belonged to El Syd, Inc., Rawson continued to insist that the money was his and indeed asserted in an interpleader action filed by his attorney that the money belonged to him and not to El Syd on the basis that El Syd was not mentioned in the conditional agreement with the Disciplinary Board. He took the position that the LaVictoires were not entitled to the money, because they had been dismissed from the *El Syd v. Rawson* lawsuit. Rawson did not prevail in the interpleader action.

After having considered the record and argument of counsel, we agree with the Disciplinary Board that Rawson, in this instance, violated Rules 16–102(D), 16–301, 16–303(A)(1), 16–804(C), and 16–804(H) of the Rules of Professional Conduct.

Rawson is no newcomer to this Court in disciplinary matters. Despite the best efforts of this Court and the Disciplinary Board to provide Rawson with the assistance necessary to correct the problems to which he attributed his prior misconduct, his behavior has not changed for the better; if anything, it has become more egregious. When appearing before this Court in this matter, he continued to insist that his conduct was in no way violative of his ethical responsibilities. In view of Rawson's failure to recognize his wrongdoing or to express even the slightest degree of remorse, the prognosis for his rehabilitation is bleak. Nonetheless, we reject the recommendation of the hearing committee and the urging of bar counsel that his disbarment be permanent.

We also decline to direct that Rawson may not, during the period of his disbarment, accept employment as a law clerk or paralegal. We do, however, direct that he familiarize himself thoroughly with the requirements of the Rules Governing Legal Assistant Services, SCRA 1986, 20–101 to –114, and remind him that activities outside the scope of these rules could subject him to the contempt powers of this Court and his attorney-employer to possible discipline under Rules 16–503 to –505 of the Rules of Professional Conduct.

IT IS THEREFORE ORDERED that Charles W. Rawson be, and he hereby is, disbarred from the practice of law pursuant to SCRA 1986, 17–206(A)(1) effective March 4, 1992.

IT IS FURTHER ORDERED that any motion to apply for reinstatement which Rawson may file pursuant to SCRA 1986, 17–214(A) must be accompanied by a showing that he has paid the costs and restitution assessed herein.

IT IS FURTHER ORDERED that Rawson shall make restitution to the following physicians in the following amounts plus interest computed at 15% per annum from July 12, 1990, until the restitution is paid: Dr. Asja Kornfeld, $1,208.25; Dr. Federico Mora, $208; and Dr. Sanford H. Kinne, $1,129.24.

IT IS FURTHER ORDERED that Rawson's compliance with Rules 17–212 and 17–213 will not be required at this time in view of his having filed the appropriate documents at the time of his June 27, 1991, summary suspension.

IT IS FURTHER ORDERED that this opinion be published in the State Bar of New Mexico *Bar Bulletin* and the *New Mexico Reports.*

The costs of these two actions in the amount of $10,052.72 are assessed against Rawson and should be paid to the Disciplinary Board no later than June 30, 1992. Interest of 15% per annum will be assessed against any amount unpaid by that date until the costs are paid in full.

IT IS SO ORDERED.

RANSOM, C.J., specially concurs.

FROST, J., not participating.

RANSOM, Chief Justice (specially concurring).

I concur with the findings and conclusions of the Disciplinary Board, but would not adopt the recommendation that Rawson be disbarred. I believe that a three-year suspension and the assessment of costs would be appropriate discipline.