4 P.3d 664

2000-NMSC-019

**In the Matter of Roger MOORE, Esq., An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

No. 26,279.

Supreme Court of New Mexico.

June 27, 2000.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque, for Disciplinary Board.

J. Wayne Griego, Albuquerque, for Respondent.

## OPINION

PER CURIAM.

{1} Pursuant to Rule 17–211 NMRA, this matter came before the Court for consideration of the recommendation of the hearing committee and the disciplinary board to accept a conditional agreement not to contest and consent to discipline tendered by Roger Moore. By the terms of the consent agreement, respondent agreed not to contest the charges that he had violated Rules 16–115(A) and (B), 17–204(A)(1), (2), and (4) through (7), and 16–804(H). For the reasons that follow, we accept the recommendation and impose the discipline to which respondent agreed.

{2} This matter began with a complaint from a chiropractor that respondent failed to pay the bill for treatment provided to his client, despite having issued a letter stating payment would be made from the settlement. The pertinent language in the letter respondent sent the chiropractor states:

> [Client] has requested that my office tender to your office a letter stating that payment of any bill for services she may incur will be made from settlement or ultimate judgment which [client] may receive as a result of the ... automobile accident. It is understood that [client] will be ultimately responsible for the payment of any bill for services incurred with your office.

Respondent denied to the chiropractor and later to disciplinary counsel that the letter in question obligated him to withhold funds to pay the chiropractor. Respondent contended that the letter only stated that his client would pay the bill from the settlement funds, although he acknowledged his letter was sent in response to a request for a letter of protection.[1] Respondent also argued that there was no assignment of proceeds, as was the case in *Romero v. Earl*, 111 N.M. 789, 810

---

1. "Letter of protection" is the customary nomenclature for a document by which a lawyer notifies a medical vendor that payment will be made when the case is settled or judgment is obtained. This is a common practice by which lawyers representing personal injury plaintiffs ensure clients will receive necessary medical treatment, even if unable to pay until the case is concluded.

P.2d 808 (1991), and that without an unambiguous assignment, no individual responsibility for payment to the healthcare provider could be imposed upon him.

{3} In *Romero*, this Court considered the effect of an agreement signed by the lawyer and the client granting to a doctor a lien on the proceeds of a personal injury suit. We held that once a lawyer has executed such an assignment, he or she is "obligated to distribute the proceeds of [the] claim in accordance with [it]," and that this obligation may be enforceable against the lawyer. *Id.* at 790, 810 P.2d at 809. A subsequent disciplinary case, *In re Rawson*, 113 N.M. 758, 833 P.2d 235 (1992), demonstrated that formal assignment language is not essential to the creation of the obligation. *Id.* at 761, 833 P.2d at 238. In *Rawson*, the attorney sent letters to three doctors stating they would be paid from the proceeds of any recovery the client received. Although Rawson's letter did not contain formal assignment language, it did contain a promise to pay the doctors from the proceeds of the suit. Relying on *Romero*, we stated that "[t]he attorney in such a situation is obligated to distribute the proceeds of the settlement in accordance with the promise to the creditors...." [2] *Id.*

{4} The language of the letter respondent sent to the chiropractor in this case clearly communicated that payment would be made "from settlement or ultimate judgment." The fact that the letter ended by saying that the client would be ultimately responsible for payment did not change the message. .A client remains ultimately liable for paying the medical vendor, for example, when no recovery is received. The essence of the letter, and the language that obligated respondent to pay the vendor from the settlement proceeds was the statement that the client had asked him to communicate that payment would be made from settlement proceeds. It should have been obvious to respondent that this is the message he was

sending, especially since he acknowledged that the letter was sent in response to a request for a letter of protection. Indeed, if respondent sent this letter intending that the vendor rely upon it to continue to render care and to postpone collection efforts, while intending not to be obligated to dispense settlement proceeds to the vendor, a more serious question of misrepresentation and fraud could arise. As we noted in *Rawson*, in response to the contention that the doctors were not paid because the client changed her mind, an attorney's obligation to abide by a client's directives "does not extend to assisting the client in defrauding courts and creditors." *Id.* at 762, 833 P.2d at 239. The consent agreement requires that any letter respondent sends to a medical vendor to indicate that payment will be made from the proceeds of settlement or suit, if not intended as a letter of protection, state in capital letters that it is not a letter of protection. If respondent decides to send such a letter, he should be reminded that, notwithstanding the capitalized disclaimer, he has a continuing obligation not to engage in dishonest or fraudulent conduct or statements. We agree with and adopt the language of the disciplinary board's formal reprimand in *In re Ellis*, S.Ct. No. 19,226, 29 *State Bar Bulletin* 29, (September 27, 1990) that "[w]hen dealing with an attorney, another person (whether an attorney or a lay person) has the right to expect that the attorney will be honest and straightforward."

{5} Because respondent failed to disburse his client's settlement funds in accordance with the letter quoted above, disciplinary counsel appropriately investigated the handling of the settlement funds in respondent's trust account. A request for trust account documentation for the period in question revealed that respondent had not maintained all required documents, nor properly recorded all transactions. In turn, an audit of respondent's trust account was con-

---

2. The claim Rawson made, that he did not pay because his client changed her mind, was also made by respondent, who asserted his client disputed the amount of the bill. If this occurs, the lawyer must follow the requirements of Rule 16-115(C), which governs the resolution of disputes over entitlement to money or property in the

lawyer's possession. The lawyer should hold the disputed amount in trust, and attempt to facilitate a resolution of the dispute. Failing this, the lawyer may deposit the disputed funds in court and allow the client and the vendor to resolve the dispute judicially.

ducted and revealed systemic problems with his trust account maintenance and record keeping. Of 164 transactions reviewed by the auditor, 78 were not only unidentified, but also were unidentifiable by respondent. He failed to maintain copies of deposit slips, a check register, or a complete copy of all checks written, nor did he keep copies of bank statements or perform the reconciliations required by Rule 17–204(A)(7).[3]

{6} Additionally, on a number of occasions, respondent's trust account balance fell below the amount indicated on his ledgers that should be holding for clients. In the case of the client whose personal injury claim was involved in this complaint, respondent presented at the eleventh hour a statement signed by the client stating she agreed that respondent could use her funds. This document, however, failed to discharge respondent's trust account obligations. Although respondent was not charged with violating Rule 16–108, it is unlikely that the document signed by respondent's client adequately reflects compliance with that rule.

{7} Rule 16–108(A) governs business transactions with clients. It requires that the terms of the transaction be fair and reasonable to the client, that the terms be disclosed to the client in writing, that the client be given a reasonable opportunity to seek the advice of independent counsel, and that the client consent in writing. Borrowing money from clients is not condoned by this Court. If an attorney determines to brave these conflict-infested waters, he or she is well advised to do so on an arm's length basis. This would include execution of customary loan documents, and the payment of a reasonable amount of interest. Further, once the money has been loaned to the attorney, it should be removed from trust. The attorney should not, as respondent did, disburse the funds from trust for the attorney's personal or business purposes. Doing so violates the prohibition of Rule 16–115(A) against commingling trust funds with the attorney's funds.

{8} This Court has repeatedly instructed New Mexico lawyers that violations of the record keeping and substantive requirements for trust accounts are viewed "as being of the most serious nature." *In re Ruybalid*, 118 N.M. 587, 589, 884 P.2d 478, 480 (1994). Any attorney who disregards the cautionary tales proffered in our opinions discussing the discipline imposed for such transgressions[4] may one day be, as respondent is now, one step away from license suspension, and facing a lengthy and expensive period of probation during deferral of suspension, as well as other conditions.

{9} NOW THEREFORE, IT IS ORDERED that the recommendation hereby is ADOPTED and the conditional agreement not to contest and consent to discipline hereby is APPROVED;

{10} IT IS FURTHER ORDERED that Roger Moore hereby is SUSPENDED from the practice of law for a definite period of eighteen (18) months pursuant to Rule 17–206(A)(2);

---

3. When disciplinary counsel requested respondent's trust records, he informed her that he did not keep his bank statements because his office had been vandalized in the past and he was concerned about client confidentiality. Respondent stated he was unaware that he was required to physically maintain the bank statements, apparently believing that having the information available from the credit union was sufficient. This precise question has not come before this Court as an issue to be decided in a disciplinary case. Because this case comes before the Court for consideration of a consent agreement, the issue is not before us now. We note, however, that Rule 17–204(A) obligates the attorney to "maintain" the required records. The primary definition of "maintain", according to *The English Language Unabridged Webster's Third International Dictionary*, is "to hold in the hand."

We also note that because the obligation to maintain the required records is the attorney's, the attorney would be held responsible if the financial institution does not have all of the required records when they are requested by disciplinary counsel. By far the better practice is for the attorney to take responsibility for preserving the necessary documentation. If office security is a concern, the attorney must take whatever steps are necessary to protect confidential information, whether it concerns clients' legal matters or trust account records.

4. Of course, if the transgressions include misappropriation of client funds, the attorney can expect disbarment. *In re Rohr*, 1997–NMSC–012, 122 N.M. 774, 931 P.2d 1390; *In re Hamar*, 1997–NMSC–048, 123 N.M. 795, 945 P.2d 1013.

{11} IT IS FURTHER ORDERED that the period of suspension shall be deferred under the following terms and conditions:

(1) Respondent shall be placed on probation throughout the deferral period under the supervision of a licensed New Mexico attorney selected or approved by disciplinary counsel;

(2) Respondent shall meet with the supervising attorney as often as the supervisor deems necessary or advisable, but no less than once per month;

(3) Respondent shall accept instruction from and comply with all directives of the supervisor concerning trust account record keeping and management procedures;

(4) Respondent shall demonstrate to the satisfaction of the supervising attorney that his current trust account is in compliance with the requirements of Rules 16–115 and 17–204 NMRA;

(5) Respondent's supervisor shall provide quarterly reports to disciplinary counsel concerning respondent's compliance with supervision. Thirty (30) days prior to the conclusion of the eighteen (18) month probationary period, the supervisor shall advise disciplinary counsel whether respondent has satisfactorily complied with the supervisor's instructions and directives;

(6) Respondent shall submit to and bear the expense of an audit of his trust account during the probationary period, conducted at a time and by auditors selected or approved by disciplinary counsel. If the audit reveals further violations of Rule 16–115, including violations of Rule 17–204, disciplinary counsel shall seek to have the deferral of respondent's suspension, or some portion thereof, revoked and may file additional charges of misconduct based upon the findings of the audit;

(7) Respondent shall compensate his supervisor at an hourly rate to be determined between him and his supervisor;

(8) Respondent shall reimburse the disciplinary board for all costs incurred in the investigation and prosecution of this matter in the amount of $3,424.07 on or before July 12, 2000;

(9) Respondent shall observe all provisions of the Rules of Professional Conduct and Rules Governing Discipline during his probationary period; and

(10) Respondent agrees that any letter he sends to medical providers to indicate that the medical provider's bill will be paid from the proceeds of settlement or suit, if such letter is not intended as a letter of protection, shall state in capitalized letters that it is not a letter of protection;

{12} IT IS FURTHER ORDERED that at the conclusion of the eighteen-month deferred suspension period, reinstatement shall be automatic so long as all conditions set forth herein and in the conditional agreement and consent to discipline are fulfilled; however, if the deferred period of suspension or any portion thereof is revoked, or any condition or obligation set forth is not fulfilled, disciplinary counsel may object to reinstatement pursuant to Rule 17–214(B) NMRA; and

{13} IT IS FURTHER ORDERED that failure to abide by the terms and conditions of the agreement may result in the filing of a motion for order to show cause pursuant to Rule 17–206(G) NMRA.

{14} IT IS SO ORDERED.