8 P.3d 856

2000-NMSC-024

**In The Matter of Juan A. DAWSON, ESQ.**
**An Attorney Licensed to Practice Before**
**the Courts of the State of New Mexico.**

**No. 26,466.**

Supreme Court of New Mexico.

Aug. 21, 2000.

### DISCIPLINARY PROCEEDING

Arne R. Leonard, Deputy Disciplinary Counsel, Albuquerque, NM, For Disciplinary Board.

Juan A. Dawson, Lovington, NM.

### OPINION

PER CURIAM.

{1} This matter came before the Court upon the recommendation of the disciplinary board to accept a conditional agreement not to contest and consent to discipline tendered by the respondent, Juan A. Dawson, pursuant to Rule 17–211 NMRA 2000 of the Rules Governing Discipline. Under that agreement, respondent declared his intention not to contest allegations that he violated Rules 16–101, 16–103, 16–104(A) and (B), 16–115(A) and (B), 16–116(D), 16–302, 16–304(C), 16–503, and 16–804(D) and (H) NMRA 2000 of the Rules of Professional Conduct. We adopt the disciplinary board's recommendation and impose the discipline provided for in the agreement.

{2} Respondent was admitted to practice law in New Mexico in January 1997. He was suspended from the practice of law by this Court in April 2000 for nonpayment of bar dues. *See In re Suspension of Active and Inactive Members of the State Bar of New Mexico for Nonpayment of 2000 Annual Bar License Fee and for Noncompliance with Rule 17–203 NMRA,* Vol. 39, No. 17 SBB 11 (April 27, 2000). Before he was suspended, respondent was charged with violating the Rules of Professional Conduct with regard to his representation of three clients.

{3} On or about July 7, 1999, Ysidro Florez, Jr., filed a complaint with the disciplinary board alleging that respondent engaged in misconduct while representing him in a criminal matter. On or about July 22, 1999, Hector Martinez filed a similar complaint against respondent with the disciplinary board. Mr. Florez and Mr. Martinez each paid respondent to defend them in jury trials

in district court.[1] Each individual also paid respondent at least $1,000.00 to appeal his conviction after the jury trial, according to receipts produced by respondent.

{4} In Mr. Martinez's case, the New Mexico Court of Appeals filed a memorandum opinion affirming the conviction. The opinion noted that the memorandum in opposition filed by respondent on Mr. Martinez's behalf did not provide the court with any additional facts or law to support his position, and directed respondent to follow the appellate rules more closely in the future. Respondent terminated his representation of Mr. Martinez after receiving the Court of Appeals opinion.

{5} In Mr. Florez's case, respondent filed a docketing statement that was identical to the one he previously filed on behalf of Mr. Martinez, except for differences in stating the facts of each case. The Court of Appeals subsequently issued an order to show cause why respondent should not be sanctioned for his failure to file the record proper in Mr. Florez's appeal. Respondent answered the order to show cause by acknowledging that he did not comply with Rule 12–208 NMRA 1999 and that he could not provide evidence that the docketing statement for Mr. Florez's appeal was mailed to the district court clerk. The Court of Appeals then issued a calendar notice rejecting respondent's docketing statement and ordering respondent to file an amended docketing statement that complied with Rule 12–208(C)(4) NMRA 1999 within twenty (20) days.[2]

{6} After this twenty-day period expired, a second order to show cause was issued in Mr. Florez's case alleging that respondent had not filed an amended docketing statement with the Court of Appeals as ordered, and that he had not filed any pleading requesting additional time to do so. Respondent subsequently filed his amended docketing statement with the Court of Appeals.

After reviewing the amended docketing statement, the Court of Appeals issued a second calendar notice admonishing respondent for his failure to comply with the first calendar notice and finding that the only differences between respondent's original docketing statement and his amended docketing statement were that: (1) the word "case" was changed to "issues" in the title of one section, and (2) one new sentence was added to that section regarding preservation.

{7} Shortly after the Court of Appeals' second calendar notice was filed, respondent sent a letter to Mr. Florez's spouse informing her that Mr. Florez's appeal had been denied by the Court of Appeals and that additional funds were required to continue respondent's representation in the appeal. Respondent subsequently withdrew as Mr. Florez's attorney and was replaced by an attorney from the public defender's appellate division.

{8} After receiving Mr. Florez's complaint, disciplinary counsel made inquiries to determine the basis for respondent's claim that additional funds were required to continue his representation of Mr. Florez in the appeal after the Court of Appeals issued its second calendar notice. In response to these inquiries, respondent produced copies of some receipts but stated that he did not have a written fee agreement or other documentation indicating the basis for his claim that additional fees were needed after the filing of the second calendar notice. In response to further inquiries about the status of his trust account records, respondent produced some bank statements but was unable to identify any additional trust account records required by Rules 16–115 and 17–204 NMRA 2000 that he had maintained. Respondent further explained that much of his practice involved criminal work for which he requested and was paid a flat fee, and that these flat fee payments were generally "placed into cash

---

1. Respondent's conduct during these jury trials is not at issue in this disciplinary proceeding, and we express no opinion about whether respondent's conduct constituted ineffective assistance of counsel or provided other grounds for reversal of his clients' convictions.

2. Rule 12–208(C)(4) states the requirements for the contents of the docketing statement, such as a statement of the issues presented by the appeal including how they arose and how they were preserved in the trial court. Service of the docketing statement under Rule 12–208 was necessary to trigger the filing of the record proper in the appellate court under Rule 12–209.

flow" and not deposited into his trust account.

{9} On or about September 20, 1999, the office of disciplinary counsel received another complaint against respondent from Stanley Goddard, II, and Sandra Hinze. Their complaint alleged that respondent had failed to refund a $500.00 payment that Ms. Hinze had sent to respondent in November 1998 in order to commence representation of Mr. Goddard in a criminal matter. In December 1998, Mr. Goddard was released from detention following a court appearance at which respondent did not appear or assist in any way. Because respondent had not represented Mr. Goddard as they had contemplated when the $500.00 advance payment was made, Mr. Goddard and Ms. Hinze asked respondent to give them a full refund and return Mr. Goddard's file in December 1998. Respondent claims that he agreed to refund the $500.00, but failed to follow through in part because he closed his office on December 30, 1998, and was out of the country for several weeks thereafter. He did not refund the $500.00 until after Mr. Goddard and Ms. Hinze filed their complaint with the disciplinary board more than eight months later. He later admitted that he did not return the file.

{10} Rule 16–116(D) requires a lawyer to refund any advance payment of fee that has not been earned upon termination of representation. Rule 16–105(A) NMRA 2000 requires a lawyer's fee to be reasonable. This Court has stated repeatedly that "[a]ny fee is excessive when absolutely no services are provided." *In re Jones,* 119 N.M. 229, 230, 889 P.2d 837, 838 (1995) (citing *In re Martinez,* 108 N.M. 252, 771 P.2d 185 (1989)); *see also In re Cherryhomes,* 115 N.M. 734, 734–35, 858 P.2d 401, 401–02 (1993) (similar). In addition, the rules prohibiting nonrefundable unearned fees have been the subject of two disciplinary notes, *see Disciplinary Note,* Vol. 36, No. 25, SBB 3 (June 19, 1997);

*Amendment to Disciplinary Note,* Vol. 36, No. 25, SBB 3 (June 26, 1997), and a formal reprimand by the disciplinary board that was upheld by this Court on appeal, *see In re Eaby,* Disciplinary No. 07-86-92, Vol. 28, No. 27, SBB 9 (July 6, 1989).[3]

{11} For these reasons, a lawyer's claim that he or she charged a client a flat fee or retainer that is nonrefundable will not suffice to justify a failure to deposit unearned client funds in a trust account, a withdrawal of client funds from a trust account to pay fees that have not yet been earned, or a failure to promptly return unearned funds to a client upon termination of the representation. The Rules of Professional Conduct in this state do not permit lawyers to charge nonrefundable unearned fees. Such unearned fees are unreasonable under Rule 16–105(A). Failure to refund the unearned portion of the fee also may interfere with the client's right to discharge his or her lawyer under Rule 16–116(A)(3) and breach the lawyer's duties upon termination of representation under Rule 16–116(D).

{12} Because the Rules of Professional Conduct do not permit lawyers to charge their clients a nonrefundable unearned fee, the unearned portion of a fee paid in advance by the client remains the property of the client. Rule 16–115(A) requires such funds to be held in trust until earned. In order for lawyers and their clients to know what portion of a flat fee or retainer may properly be withdrawn from trust, lawyers must inform their new clients of the basis upon which they will compute the amount of fee earned, *see* Rule 16–105(B), and maintain records that will enable them to determine the ongoing status of the fee, even when the fee arrangement is for a flat fee, *see* Rules 16–115(A), 17–204(A). "The obligation to properly maintain one's trust ac-

---

**3.** Courts in other jurisdictions also have interpreted their rules to include a prohibition on nonrefundable unearned fees. *See generally* Lester Brickman & Lawrence A. Cunningham, *Nonrefundable Retainers: A Response to Critics of the Absolute Ban,* 64 U. Cin. L.Rev. 11 (1995). Most recently, the Colorado Supreme Court adopted such a prohibition, but decided to apply some of its rulings prospectively and directed that the

issue of nonrefundable unearned fees should be the subject of proposed rulemaking in that state. *See In re Sather,* 3 P.3d 403, 412 n. 11, 414–415 (Colo.2000) (en banc). As the respondent in this case has consented to discipline and there already exists sufficient authority on this issue in New Mexico, we conclude that a prospective ruling or proposed rulemaking is not warranted by the circumstances of this case.

count is an affirmative one. Every attorney is charged with the obligation to determine recordkeeping requirements and to maintain his or her trust account in compliance with the[se] requirements." *In re Turpen*, 119 N.M. 227, 228, 889 P.2d 835, 836 (1995).

{13} We recognize that lawyers in some practice areas, such as criminal defense, may operate in circumstances that warrant the advance payment of fees and the use of alternative fee arrangements in lieu of billing at an hourly rate. We also recognize that it may not be feasible to determine how much of a flat fee has been earned by means of a simple computation of billable hours under certain circumstances. Rule 16–105(A) lists several other factors besides the expenditure of time and labor that may be considered in determining the reasonableness of a lawyer's fee. These factors may allow for the entire fee to be earned before the completion of the representation in some cases, provided that the fee arrangement sufficiently informs the client how the factors will be applied.

{14} Regardless of a lawyer's reasons for requiring an advance payment of a flat fee from a particular type of client, however, these clients are still entitled to the same protections afforded to other members of the public under the Rules Governing Discipline and the Rules of Professional Conduct. After accepting the advance payment of a flat fee, these rules do not permit a lawyer to threaten to prejudice a client's interests by terminating the representation at a critical stage of the proceedings in order to coerce payment of additional fees. *See In re Trujillo*, 110 N.M. 180, 181, 793 P.2d 862, 863 (1990); *cf. Model Rule of Professional Conduct* 1.5 cmt. (1983) ("[A] lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client."). If a dispute arises between the lawyer and client about what part of the fee has been earned, Rule 16–115(C) requires the lawyer to continue to hold the funds in dispute separate from the lawyer's property until the dispute is resolved. *Cf. In re Moore*, 2000–NMSC–019, ¶ 3 n. 2, 129 N.M.

217, 4 P.3d 664 Vol. 39, No. 27 SBB 20 (July 6, 2000) (applying this rule to disputes with a third person). It remains the lawyer's burden to prove the value of the legal services rendered. *See Calderon v. Navarette*, 111 N.M. 1, 3, 800 P.2d 1058, 1060 (1990) (citing *Van Orman v. Nelson*, 78 N.M. 11, 23, 427 P.2d 896, 908 (1967)).

{15} While there was no allegation that respondent's fees were excessive in this case, his improper handling of flat fees or retainers did lead to serious trust account violations and a failure to terminate his representation of clients in an orderly manner. Based on the uncontested allegations before us in this matter, we conclude that respondent violated Rule 16–115(A) by failing to hold the unearned fees paid by Mr. Florez and Mr. Martinez separate from his own property, failing to keep the unearned funds belonging to these clients in a separate account, and failing to keep complete records of such account funds and other property in a manner that conforms to the requirements of Rule 17–204. In addition, respondent violated Rule 16–101 by failing to provide competent representation to Mr. Florez and Mr. Martinez in their appeals, as evidenced by the findings of the Court of Appeals regarding his failure to comply with the Rules of Appellate Procedure. He violated Rule 16–104(B) by failing to explain matters to the extent reasonably necessary to permit Mr. Florez and Mr. Martinez to make informed decisions regarding the representation. He violated Rule 16–804(D) because his actions in representing Mr. Florez and Mr. Martinez were prejudicial to the administration of justice.

{16} With respect to his representation of Mr. Florez, respondent also violated Rule 16–103, by failing to act with reasonable diligence and promptness in representing a client; Rule 16–302, by failing to make reasonable efforts to expedite litigation consistent with the interests of the client; and Rule 16–304(C), by knowingly disobeying an obligation under the rules of a tribunal. With respect to the complaint by Mr. Goddard and Ms. Hinze, respondent violated Rule 16–104(A), by failing to keep a client reasonably informed about the status of a

matter and failing to promptly comply with reasonable requests for information; Rule 16–115(B), by failing to promptly deliver to the client or a third person any funds or other property the client or third person is entitled to receive; and Rule 16–503, by failing to make reasonable efforts to ensure that the conduct of his nonlawyer assistants was compatible with his own professional obligations as a lawyer. Finally, with respect to all of the aforementioned clients, respondent violated Rule 16–116(D), by failing to terminate the representation in an orderly manner, and Rule 16–804(H), by engaging in conduct that reflects adversely on his fitness to practice law.

{17} In addition to agreeing not to contest the above allegations, respondent has consented to disciplinary sanctions that include making restitution to Mr. Florez and Mr. Martinez, as well as completing a two-year deferred suspension and a period of supervised probation that will take effect should he ever be reinstated and resume the active practice of law in this state. In light of respondent's cooperation with disciplinary authorities in this proceeding, his relative inexperience in the practice of law, and the absence of any allegations of intentional dishonesty or conversion of client funds, we conclude that these sanctions are appropriate.

{18} It should be noted, however, that many of the conditions of probation that we impose in this case, such as trust account audits, a law office management consultation, and continuing legal education coursework, involve measures that could be beneficial to many lawyers, regardless of whether they are the subject of a disciplinary proceeding. Thus, if there is a lesson to be learned from this case, it is that lawyers experiencing difficulty in managing their practices should not wait until they receive a complaint from the disciplinary board to confront these difficulties and seek assistance from more experienced practitioners, consultants, or accountants. It would be wise for any newly admitted lawyer contemplating a solo practice to include in his or her business plan provisions for retaining a certified public accountant to audit his or her trust account and receiving additional training in areas relevant to law office management.

{19} NOW, THEREFORE, IT IS ORDERED that the recommendation hereby is ADOPTED and the conditional agreement not to contest and consent to discipline is APPROVED;

{20} IT IS FURTHER ORDERED that Juan A. Dawson hereby is SUSPENDED from the practice of law pursuant to Rule 17–206(A)(2) NMRA 2000 for a period of two (2) years;

{21} IT IS FURTHER ORDERED that should respondent resolve the nonpayment of bar dues and be recommended for reinstatement to active status by the Board of Bar Examiners, the entire period of suspension shall be deferred and respondent shall be placed on probationary status;

{22} IT IS FURTHER ORDERED that during any portion of the deferred suspension period during which respondent is *not* practicing law in New Mexico, he shall be on *unsupervised probation* and shall comply with the following terms and conditions:

(1) Respondent shall observe and comply with the Rules of Professional Conduct and the Rules Governing Discipline;

(2) Respondent shall respond in a prompt and timely manner to complaints filed with the disciplinary board and requests for information from the office of disciplinary counsel;

(3) Respondent shall keep this Court, the State Bar of New Mexico, and the disciplinary board informed of his current address and shall immediately notify the clerk of this Court, the State Bar of New Mexico, and the disciplinary board of any changes in his address and telephone number; and

(4) Within thirty (30) days of the date on which the unsupervised probation commences, respondent shall provide written certification to disciplinary counsel that he has no pending New Mexico cases and that he is not the attorney of record in any New Mexico case.

{23} IT IS FURTHER ORDERED that should respondent be reinstated to active status by this Court, upon recommendation

of the Board of Bar Examiners, he shall notify disciplinary counsel of his intent to return to the practice of law in New Mexico at least thirty (30) days prior to such return;

{24} IT IS FURTHER ORDERED that should respondent be reinstated to active status and return to the practice of law in New Mexico at any time, regardless of whether such return occurs before or after the expiration of the two (2) year period of deferred suspension, he shall be placed on *supervised probation* for a period of two (2) years beginning on the date of his return to the practice of law in New Mexico and he shall comply with the following terms and conditions:

(1) Respondent shall observe and comply with the Rules of Professional Conduct and the Rules Governing Discipline;

(2) Respondent shall respond in a prompt and timely manner to complaints filed with the disciplinary board and requests for information from the office of disciplinary counsel;

(3) Respondent shall be supervised by a licensed attorney, who is approved by disciplinary counsel, at his own expense;

(4) Upon returning to the practice of law in New Mexico, respondent shall retain the services of a law office management consultant, at his own expense and approved by disciplinary counsel, to organize his practice. A copy of the consultant's report shall be provided to disciplinary counsel within three (3) months of his return to the practice of law in New Mexico;

(5) Respondent shall successfully complete at least fifteen (15) hours of continuing legal education in the areas of fee agreements, trust account management, and law office management above and beyond the minimum continuing legal education requirements of New Mexico between the dates of May 15, 2000, and the end of the first three (3) months of supervised probation;

(6) Respondent shall successfully complete at least fifteen (15) hours of continuing legal education in the area of appellate practice above and beyond the minimum continuing legal education requirements of New Mexico between the dates of May 15, 2000, and the end of the first six (6) months of supervised probation;

(7) Respondent shall prominently display the following notice in the reception area of any law office in which he provides legal services during the period of supervised probation:

To our clients:

Please be advised that the law practice of Juan A. Dawson is being supervised by [supervisor's name & telephone number]. Should you have any unanswered questions or concerns about the handling of your legal work, please contact [supervisor's name].

(8) Respondent shall meet with his supervising attorney on the date he returns to the practice of law in New Mexico and on at least a monthly basis thereafter at times and places directed by the supervising attorney;

(9) Respondent shall follow all reasonable directions of his supervising attorney in a prompt and satisfactory manner;

(10) Respondent shall be responsible for ensuring that the supervising attorney advises disciplinary counsel on at least a quarterly basis as to whether he has met with the supervising attorney as required and is following the supervising attorney's instructions;

(11) Respondent shall provide disciplinary counsel with a quarterly reconciliation of his trust account reflecting the status of the account and that the account is being maintained in accordance with Rules 16–115 and 17–204;

(12) Respondent's trust account shall be audited at his own expense on a random basis two (2) times during the period of his supervised probation by a certified public accountant approved by disciplinary counsel; and

(13) The results of such trust account audits shall be reported to disciplinary counsel and may provide the basis for additional charges of professional misconduct if they reveal further violations of Rule 16–115 (including violations of Rule 17–204).

{25} IT IS FURTHER ORDERED that upon completion of the period of supervised

probation, respondent shall be required to seek reinstatement to non-probationary status pursuant to Rule 17–214(H) NMRA 2000. Respondent shall be reinstated to non-probationary status only upon demonstrating that all of the conditions of the supervised probation have been satisfied;

{26} IT IS FURTHER ORDERED that in consideration of the charges that respondent engaged in defalcation in a fiduciary capacity by failing to properly account for client funds, he shall make restitution to the following persons in the following amounts on or before November 6, 2000, with interest to accrue at the rate of fifteen percent (15%) per annum on any unpaid balance thereafter:

| Ysidro Florez | $1,000.00 |
| Hector Martinez | $1,000.00 |

Respondent shall provide disciplinary counsel with receipts or canceled checks documenting such payments. The restitution to Mr. Florez and Mr. Martinez shall be reduced to transcripts of judgment;

{27} IT IS FURTHER ORDERED that should respondent fail to comply with any of the aforementioned conditions or if disciplinary counsel receives additional complaints against him that give rise to the filing of formal charges of professional misconduct during the two (2) year period of his deferred suspension, upon the filing with this Court of an affidavit from disciplinary counsel attesting to his noncompliance or the filing of such formal charges, respondent's probation may be summarily revoked and the remainder of the period of suspension imposed; and

{28} IT IS FURTHER ORDERED that should respondent violate any of the aforementioned terms and conditions, disciplinary counsel shall bring the violation to the attention of this Court pursuant to Rule 17–206(G) and should respondent be found in contempt of this Court he shall be fined, censured, suspended, disbarred, and/or have his period of probation extended or revoked.

{29} **IT IS SO ORDERED.**