IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Mitchell J. BARROCK, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Mitchell J. BARROCK, Respondent.

Supreme Court

*No. 2005AP2180–D. Decided February 22, 2007.*

2007 WI 24

(Also reported in 727 N.W.2d 833.)

¶ 1. PER CURIAM. We review the referee's recommendation that the license of Attorney Mitchell J. Barrock to practice law in this state be suspended for a period of 60 days due to his professional misconduct.

¶ 2. Neither the Office of Lawyer Regulation (OLR) nor Attorney Barrock has appealed the referee's recommendation. Thus, the matter is submitted to the court for its review pursuant to SCR 22.17(2).[1] In conducting our review, we will affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay*, 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Finally, in accordance with our authority to supervise the practice of law in this state, we determine the level of discipline that is appropriate under the particular circumstances, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

---

[1] SCR 22.17(2) provides: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

¶ 3. After our independent review of the record, we adopt the referee's findings of fact and conclusions of law. Further, we agree with the referee's recommendation that Attorney Barrock's license to practice law in this state be suspended for a period of 60 days. We also decide that Attorney Barrock should pay the full costs of this disciplinary proceeding.

¶ 4. On August 26, 2005, the OLR filed a complaint against Attorney Barrock that alleged six counts of professional misconduct, which are explained below. The OLR's complaint sought a 60–day suspension of Attorney Barrock's license to practice law. Attorney Barrock initially filed an answer that admitted some of the factual allegations of the complaint, denied other factual allegations, and denied any violation of the Rules of Professional Conduct. Reserve Judge Dennis J. Flynn was appointed referee.

¶ 5. Just prior to the scheduled disciplinary hearing, Attorney Barrock entered into a stipulation and no contest plea. The stipulation provided that Attorney Barrock was withdrawing his answer and was now pleading no contest to each of the six counts alleged in the complaint. The stipulation further stated that the referee could use the factual allegations of the OLR's complaint, with the exception of two paragraphs not central to the complaint's charges, as the factual basis for a determination of misconduct. The stipulation set forth the parties' joint request that the court impose the 60–day suspension. Finally, the stipulation stated that Attorney Barrock was entering into the stipulation and no contest plea voluntarily and with knowledge of the relevant facts and rights that he was waiving and that Attorney Barrock's plea was not the result of plea-bargaining.

211

¶ 6. The referee accepted Attorney Barrock's no contest plea. Based on the allegations of the complaint, he concluded that Attorney Barrock had violated the Rules of Professional Conduct as alleged in the six counts of the complaint.

¶ 7. According to the OLR's complaint, which has been stipulated as true, Attorney Barrock practices law with his father in Brookfield. He was privately reprimanded in 1992 for having violated SCR 20:1.16(d) and the attorney's oath found in SCR 40.15.

¶ 8. The misconduct in the present case relates to a personal injury matter involving W.F. W.F. originally retained the law firm of Michael H. Hupy & Associates (Hupy) to pursue a claim stemming from an automobile accident. W.F. signed a retainer agreement with Hupy that stated that Hupy would receive 33$\frac{1}{3}$ percent of any monies that W.F. received in connection with his claim. The retainer agreement further provided an attorney lien in favor of Hupy for such percentage.

¶ 9. On June 15, 2000, approximately one year after W.F. entered into the retainer agreement with Hupy, Attorney Barrock's father, Attorney James Barrock, sent a letter to Hupy stating that W.F. wished to have another attorney take over his case.[2] The letter proposed alternatives for dividing the attorney fees produced by the case.

¶ 10. Hupy rejected all of the alternatives proposed by James Barrock's letter. Instead, Hupy put forth another alternative and asked that the expenses already incurred by Hupy be protected.

---

[2] At this time, Attorney Barrock and his father shared office space.

¶ 11. On June 23, 2000, although the attorney fee issue had not been resolved, Attorney Barrock entered into a fee agreement with W.F.

¶ 12. On March 20, 2001, Hupy sent James Barrock a letter reminding him of the existence of the lien that Hupy had on any monies generated by W.F.'s claim. Hupy also requested an update on the progress of W.F.'s claim.

¶ 13. A couple of days later, Attorney Barrock responded to Hupy's letter. Attorney Barrock's letter stated that he did not have a copy of any lien in his file and that W.F. had informed him that Hupy had released its interest against W.F.'s case.

¶ 14. On April 23, 2001, Hupy replied to Attorney Barrock's letter and referred him to the initial, June 15, 2000 letter, written by James Barrock. Hupy requested that Attorney Barrock state whether he acknowledged Hupy's lien.

¶ 15. Attorney Barrock and Hupy exchanged additional letters in June 2001. Hupy reiterated that it had a valid lien on any recovery obtained by W.F. Attorney Barrock stated that Hupy had done little work on W.F.'s claim and that he doubted that W.F. would be willing to pay any attorney fee to Hupy.

¶ 16. In early August 2002 W.F. entered into a settlement agreement with Omni Insurance (Omni), by which Omni would pay $34,135 to W.F. This amount was deposited into Attorney Barrock's trust account on August 8, 2002. Those funds were disbursed to various parties that same day. The closing statement showed that the attorney fees totaled $11,378.33. Attorney Barrock disbursed $6225.17 to his father and $5689.16 to himself, for a total of $11,914.33. Attorney Barrock also gave W.F. a check for $17,195.69, pursuant to the closing statement.

¶ 17. On October 1, 2002, Hupy sent a letter to Attorney Barrock again stating that Hupy had a lien against any funds recovered by W.F.

¶ 18. In a response letter, Attorney Barrock told Hupy that W.F. had instructed him not to acknowledge Hupy's lien and that Attorney Barrock had therefore made all appropriate disbursements.

¶ 19. Hupy then requested Attorney Barrock to confirm that he had disbursed disputed funds from his trust account. By copy of this letter, Hupy advised Omni's attorney that Hupy was demanding to receive one-third of the settlement.

¶ 20. Omni's attorney then wrote a letter to Attorney Barrock telling him that it was Attorney Barrock's responsibility to address any attorney liens granted by his client, W.F.

¶ 21. On November 14, 2002, Attorney Barrock sent a letter to Hupy, stating that W.F. did not believe that Hupy had a "justifiable lien" and that W.F. had instructed Attorney Barrock not to honor it.

¶ 22. On November 19, 2002, Hupy demanded that Attorney Barrock place one-third of the settlement amount in Hupy's trust account within ten days or else Hupy would file a lawsuit. When Attorney Barrock did not satisfy Hupy's demand, Hupy filed a lawsuit against Attorney Barrock and Omni seeking one-third of the settlement amount. Attorney Barrock filed an answer and cross-complaint. Attorney Barrock's cross-complaint stated that W.F. had told him that Hupy had released W.F. from all contracts. Attorney Barrock also asserted that W.F. had agreed to indemnify him for all claims and liens connected with Attorney Barrock's representation, including prior attorney fees. W.F. had not made any such indemnification agreement.

214

¶ 23. Although Attorney Barrock continued to have an obligation to W.F. to represent him regarding the fee dispute with Hupy, Attorney Barrock did not do so and did not seek W.F.'s consent to withdraw and pursue Attorney Barrock's own claims. W.F., on his own, chose to retain a third attorney to represent him in connection with the fee dispute. Attorney Barrock ultimately executed a "Covenant Not to Sue" W.F. This covenant related to any potential claims arising out of Attorney Barrock's representation of W.F.

¶ 24. Attorney Barrock was deposed in June 2003. At that deposition, Attorney Barrock was asked whether he had in fact disbursed the attorney fees from W.F.'s settlement. Attorney Barrock responded, "No. They're in the trust account." This was not true, as Attorney Barrock had made disbursements to himself and to his father in August 2002.

¶ 25. In response to the OLR's investigation about the disputed attorney fees, Attorney Barrock wrote in a January 12, 2004 letter, "I have held $5,000.00 in fees in our trust account to cover Attorney Hupy's potential lien interest." He further stated, "I have withdrawn for attorney fees regarding this case in the amount of $5,689.17." Attorney Barrock did not disclose the disbursement of the attorney fee of $6225.17 to his father. In a subsequent letter, after the OLR noted the bank records showing the full disbursement of the attorney fees, Attorney Barrock further stated that the funds necessary to protect Hupy's interest were still being held in trust in funds that had been "earmarked" for Attorney Barrock.

¶ 26. Finally, during the OLR's review of Attorney Barrock's trust account records, the OLR discovered an August 14, 2002 check for $300 that had been drawn on Attorney Barrock's trust fund account and that had the

notation "loan" in the memo line. Attorney Barrock claimed that the check was not a personal loan from trust funds, but actually represented a partial distribution of attorney fees that he had earned. The OLR then requested additional trust account records from Attorney Barrock to verify this claim, including a "side sheet" that he allegedly maintained. Attorney Barrock was not able to produce the trust account records requested by the OLR, claiming that they had been discarded when his firm switched to a new accounting program in 2002.

¶ 27.　On the basis of the facts as described above, the referee concluded that Attorney Barrock had committed six violations of the Supreme Court Rules of Professional Conduct for Attorneys. First, the referee concluded that by failing to hold in his trust account a portion of the settlement proceeds despite his knowledge of Hupy's lien on those funds, Attorney Barrock had violated SCR 20:1.15(d).[3]

¶ 28.　By knowingly misrepresenting in his cross-complaint that W.F. had agreed to indemnify him for all claims and liens, including prior attorney fees, relating to his representation of W.F., Attorney Barrock know-

---

[3] SCR 20:1.15(d) provides in relevant part:　Prompt notice and delivery of property.

　　(3) Disputes regarding trust property. When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. . . .

ingly advanced a factual position without a basis for doing so, in violation of SCR 20:3.1(a)(2).[4]

¶ 29. The referee also stated that Attorney Barrock had continued to represent W.F. while at the same time attempting to implead W.F. as a third-party defendant in a pending lawsuit in which Attorney Barrock was a named defendant. The referee concluded that this situation represented a conflict of interest for which Attorney Barrock had not obtained a written waiver, contrary to SCR 20:1.7(b).[5]

¶ 30. With respect to the fourth count, the referee concluded that Attorney Barrock's deposition testimony that the attorney fees remained in his trust account constituted conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[6]

¶ 31. Next, the referee found that Attorney Barrock had failed to disclose to the OLR that he had disbursed attorney fees to his father and had asserted that he continued to maintain funds in trust to cover Hupy's lien when in fact all funds had been disbursed.

---

[4] SCR 20:3.1(a)(2) provides that in representing a client, a lawyer shall not "knowingly advance a factual position unless there is a basis for doing so that is not frivolous."

[5] SCR 20:1.7(b) provides that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest."

[6] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

217

The referee concluded that this conduct had violated SCR 22.03(6),[7] in further violation of SCR 20:8.4(f).[8]

¶ 32. Finally, the referee determined that Attorney Barrock had violated SCR 20:1.15(e)[9] when he had failed to maintain records of trust account funds for the required minimum of six years, including records relating to the August 14, 2002 check.

¶ 33. With respect to the question of discipline, the referee did not note many aggravating or mitigating factors in this case. On the aggravating side, the referee pointed to the fact that Attorney Barrock had already been privately reprimanded in 1992. On the mitigating side, the referee noted that Attorney Barrock had recently attended an OLR-sponsored seminar on trust account practices. In the end, the referee concluded that the 60–day suspension stipulated to by the parties was a reasonable level of discipline given Attorney Barrock's admitted misconduct. In addition, the referee recommended that Attorney Barrock be required to pay

---

[7] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[9] SCR 20:1.15(e) provides in relevant part: "(6) Record retention. A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation."

the costs of this disciplinary proceeding. Those costs totaled $6942.90, as of June 20, 2006.

¶ 34. After independently reviewing the record in this matter, we adopt the referee's findings of fact based on the allegations in the OLR's complaint, to which Attorney Barrock stipulated. We further adopt the referee's legal conclusions that the stipulated facts prove each of the OLR's six counts of professional misconduct against Attorney Barrock. We agree that Attorney Barrock's serious violation of the rules regarding disputed trust account monies, in connection with his other misconduct, warrants a 60–day suspension of his license to practice law in this state. Finally, we determine that Attorney Barrock should be required to pay the full costs of this disciplinary proceeding.

¶ 35. IT IS ORDERED that the license of Attorney Mitchell J. Barrock to practice law in Wisconsin is suspended for a period of 60 days, effective April 6, 2007.

¶ 36. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Mitchell J. Barrock shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Barrock to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 37. IT IS FURTHER ORDERED that if he has not already done so, Attorney Mitchell J. Barrock shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 38. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The dissent harkens back to an earlier dissent in *Yorgan v. Durkin,* 2006 WI 60, 290 Wis. 2d 671,

715 N.W.2d 160.[1] The dissent concludes that Attorney Barrock "should not be disciplined for the alleged violation of SCR 20:1.15(d)(3) because this court has concluded [in *Yorgan*] that it is permissible [for an attorney] to fail to hold settlement proceeds received from a personal injury claim in an attorney trust account when the attorney knows there is a claim by another person to a portion of those proceeds."[2]

¶ 39. Because the dissent omits key facts and applicable law, the dissent obliterates any difference between a civil action and a discipline action and any difference between an attorney's claim and a chiropractor's claim.[3] The dissent cites no authority (and it cannot) for conflating a civil liability claim against a lawyer by a chiropractor (*Yorgan*) and an Office of Lawyer Regulation claim against a lawyer for ignoring a statutorily protected attorney lien in violation of the Rules of Professional Conduct for Attorneys (*Barrock*). This conflation contravenes the law and the Rules of Professional Conduct.

¶ 40. I write to help avoid "confusion and delay."[4] The dissent is, in my opinion, off track, using the wrong vehicle to express continuing disagreement with the *Yorgan* case.

---

[1] *Yorgan v. Durkin*, 2006 WI 60, ¶¶ 53–80, 290 Wis. 2d 671, 715 N.W.2d 160 (Roggensack, J., dissenting).

[2] Dissent, ¶ 61.

[3] "I cannot agree that it is not contrary to public policy to distribute trust account funds to which a chiropractor makes a claim, but it is contrary to public policy to distribute trust account funds to which an attorney makes a claim. Therefore, I conclude Attorney Barrock did not violate SCR 20:1.15(d)(3)." Dissent, ¶ 76.

[4] Sir Topham Hatt, the railroad controller on the children's television series "Thomas the Tank Engine and Friends," fre-

¶ 41. *Barrock* and *Yorgan* are rooted in different causes of action, have materially different facts, are governed by different laws, and are in different forums that are resolving different issues. The crux of the discipline action in the present case (generally speaking) is that the lawyer has, contrary to the Rules of Professional Conduct, released funds in his or her possession knowing that a lawyer claims a statutory lien upon all or part of the funds. The crux of a civil action against a lawyer who has released funds is (generally speaking) that a court is to determine the rights of the various claimants against the lawyer and others claiming an interest in the funds.

¶ 42. I shall summarizes the two cases quickly and then discuss them in more detail.

¶ 43. *Barrock* is a disciplinary proceeding based on the Rules of Professional Conduct. Simply stated, a state statute recognizes an agreement between a client and an attorney granting the attorney a lien upon proceeds from a personal injury recovery to protect the attorney's fees. The Rules of Professional Conduct provide that an attorney must protect such a lien upon the proceeds by keeping the proceeds in trust. Attorney Barrock disbursed the funds without protecting the *alleged* lien and thus violated the Rules and faced disciplinary proceedings. The attorney sued Attorney Barrock in the Milwaukee County circuit court for payment of the attorney's bill for legal services rendered the client. The attorney's civil liability claim (upon his claimed lien) against Attorney Barrock is not before us. That is a separate civil suit.[5]

---

quently scolds the engines with, "You have caused confusion and delay!"

[5] *Michael F. Hupy & Assocs. v. Omni Ins. Co.,* No. 2002CV11870 (Milwaukee County Cir. Ct.).

¶ 44. In contrast, *Yorgan* was a small claims action by a chiropractor against a lawyer for payment of the chiropractor's bill for services rendered a patient. Simply stated, the chiropractor demanded that the lawyer pay the chiropractor the fees for services rendered a patient who was the lawyer's client and for whom the lawyer recovered funds for personal injury on the ground that the chiropractor had a lien on the funds. This court dismissed the chiropractor's *small claims* action, holding, inter alia, that the chiropractor has no lien on the proceeds and that the attorney was not a party to the agreement between the chiropractor and the patient. Accordingly, the attorney was not civilly liable to the chiropractor under the facts of that case. *Yorgan* was not a disciplinary proceeding based on the Rules of Professional Conduct. *Yorgan* is comparable to the separate civil action against Attorney Barrock in the Milwaukee County circuit court.

¶ 45. I shall now discuss each case in greater detail.

¶ 46. ***The Barrock Case.*** This case is a discipline case, governed by a lien statute and the Rules of Professional Conduct.

¶ 47. An injured person hired Attorney Michael Hupy to pursue a claim and signed a contract granting the attorney a lien upon any proceeds for the payment of his fee. The person later retained Attorney Barrock to pursue the same claim.

¶ 48. Hupy's contractual lien is protected by statute. Wisconsin Stat. § 757.36 validates an attorney-client contract that grants the attorney a lien upon the proceeds derived in any action brought for the enforcement of the cause of action, as security for fees in the conduct of the litigation. The statute further provides that when notice of the contract is given to the opposite

party or his or her attorney, no settlement or adjustment of the action may be valid as against the lien so created.[6]

¶ 49. Attorney Barrock settled the claim and received funds to which his client was entitled. Attorney Barrock knew of Attorney Hupy's asserted lien on the funds and nevertheless disbursed the funds without making payment to Attorney Hupy.

¶ 50. The Rules of Professional Conduct (SCR 20:1.15(d)(3)) require that, when "the client and another person claim ownership interest in trust property identified by a lien . . . , the lawyer [here, Barrock] shall hold that property in trust until there is an accounting and severance of the interests."[7]

¶ 51. Attorney Barrock failed "to hold in his trust account a portion of the settlement proceeds despite his knowledge of [the lawyer's] lien on those funds," and thus he violated SCR 20:1.15(d). Majority op., ¶ 27.[8]

---

[6] Wisconsin Stat. § 757.36 provides as follows:

Any person having or claiming a right of action . . . may contract with any attorney to prosecute the action and give the attorney a lien upon the cause of action and upon the proceeds or damages derived in any action brought for the enforcement of the cause of action, as security for fees in the conduct of the litigation; when such agreement is made and notice thereof given to the opposite party or his or her attorney, no settlement or adjustment of the action may be valid as against the lien so created . . . .

*See also* Wis. Stat. §§ 757.37, .38.

[7] SCR 20:1.15(d)(3), Rules of Professional Conduct for Attorneys, reads as follows:

(3) Disputes regarding trust property. When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. . . .

[8] For a discussion of a lawyer's duty regarding property in

¶ 52. *The Yorgan Case*. *Yorgan* involved a lawyer's personal civil liability to a client's creditor when the creditor did not have a lien on the funds. *Yorgan* is not a lawyer discipline case.

¶ 53. In *Yorgan,* the chiropractor rendered services to a patient for injuries incurred in a car accident. At the chiropractor's request the patient signed an "Authorization and Doctor's Lien" stating that funds from any settlement from the accident be used to compensate the chiropractor. The patient retained Attorney Thomas Durkin to handle the personal injury claim. The attorney knew about the "lien authorization contract" but nevertheless disbursed the funds without paying the chiropractor.

¶ 54. The chiropractor sued the attorney in small claims court for payment of the fees for the chiropractic services. On a petition for review, this court held against the chiropractor, reasoning as follows: the chiropractor had no statutory, equitable, or common law lien upon the proceeds of the settlement; the contract between the patient and the chiropractor contemplated that, before the attorney was bound by the contract, the attorney would have to sign it; the attorney never signed the agreement or otherwise accepted the terms of the "lien authorization contract" and therefore was not bound by the contract; even if the attorney had a duty to the client to pay the chiropractor, the applicable general rule is that an attorney is not liable to third parties for breach of a duty to the client; and public policy does not favor an attorney being liable to creditors and assignees of the client. Based on this reasoning, the court held that the attorney was not civilly

the lawyer's possession, see 1 Restatement (3d) of the Law Governing Lawyers §§ 44–45 (1998).

liable to the chiropractor for having disbursed the funds without paying the chiropractor.

¶ 55. The *Yorgan* court considered the applicability of SCR 20:1.15(d), as did Justice Wilcox's concurrence in that case. Both opinions conclude that SCR 20:1.15(d) of the Rules of Professional Conduct was not determinative of an attorney's civil liability.[9] The Preamble to SCR 20 explicitly states that the Rules of Professional Conduct do not provide an independent basis for civil liability.[10] The *Yorgan* court addressed civil liability and refrained from addressing the applicability of the Rules of Professional Conduct to the circumstances of the case.[11]

¶ 56. **Synthesis and Conclusion.** According to the dissent, the determinative factor in both the present discipline case and in the *Yorgan* civil liability case is the attorney's knowledge that a claim exists. While both cases involve an attorney who holds a client's funds knowing of the claims of another, the similarities end there.

¶ 57. In the present discipline case, a statute recognizes an attorney's lien on the proceeds, and SCR 20:1.15(d) prohibits an attorney from paying the proceeds and ignoring the lien. Attorney Barrock violated the Rule and is being disciplined. In *Yorgan,* the court

[9] *Yorgan,* 290 Wis. 2d 671, ¶ 25.

[10] *Id.* The *Yorgan* court also cited *Williams v. Rexworks, Inc.,* 2004 WI App 228, ¶ 20, 277 Wis. 2d 495, 691 N.W.2d 897 ("[I]t is clear from the preamble, and from the lack of any authority to the contrary, that the [Rules of Professional Conduct for Attorneys] do not provide an independent basis for civil liability, and do not create any presumption that a legal duty has been breached."); and *Nauga, Inc. v. Westel Milwaukee Co.,* 216 Wis. 2d 306, 318 n.5, 576 N.W.2d 573 (Ct. App. 1998).

[11] *Yorgan,* 290 Wis. 2d 671, ¶ 25.

determined that the chiropractor had no protected rights or interests in the proceeds against the lawyer and the lawyer was not liable in a civil claim. The *Yorgan* court never addressed whether that attorney violated the Rules of Professional Conduct. Discipline was not an issue in the case.

¶ 58. The applicable law and the nature of the proceedings conspire to distinguish the two cases. In perceiving an analogy when none exists, the dissent creates an analysis when none is required.

¶ 59. For the reasons set forth, I write separately.

¶ 60. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶ 61. PATIENCE DRAKE ROGGENSACK, J. (*dissenting in part*). The court's per curiam decision approves the discipline of Attorney Mitchell J. Barrock for violations of various supreme court rules. Per curiam op., ¶ 3. I agree that Attorney Barrock should be disciplined for rule violations. I write in partial dissent because I conclude that Attorney Barrock should not be disciplined for the alleged violation of SCR 20:1.15(d)(3) because this court has concluded that it is permissible to fail to hold settlement proceeds received from a personal injury claim in an attorney trust account when the attorney knows there is a claim by another person to a portion of those proceeds. *Yorgan v. Durkin,* 2006 WI 60, ¶ 2, 290 Wis. 2d 671, 715 N.W.2d 160. In my view, the court's decision in *Yorgan* modifies when an attorney has an obligation to retain settlement proceeds in his trust account, to which proceeds another person makes a claim. The court has concluded that a known claim to a portion of the proceeds is insufficient to lawfully prevent an attorney from distributing the proceeds to him and others. *Id.* Rather, the court has

concluded that what is required to validly assert such a claim is either the agreement of the attorney into whose trust account the proceeds were paid or an equitable lien against the proceeds. *Id.* The court also concluded that public policy does not favor imposing liability on an attorney who disburses all of the proceeds without paying one who makes a claim to the attorney in possession of those proceeds. *Id.* Given the court's reasoning in *Yorgan,* in my view, Attorney Barrock should not be sanctioned for a violation of SCR 20:1.15(d)(3) on the facts of this case. Accordingly, I would remand to the referee for a recommendation for discipline that should be imposed when the violation of SCR 20:1.15(d)(3) is not considered, and I respectfully dissent, in part, from the majority opinion.

¶ 62. No one cites *Yorgan* to us. Perhaps that is because it was not released until June 2, 2006 and the referee issued his Decision and Recommendations on May 31, 2006. Of course there may be differences between a civil claim that settlement proceeds have been distributed in contravention of an alleged contractual right of recovery against them and an allegation that the Rules of Professional Conduct have been violated because settlement proceeds have been distributed in contravention of an alleged contractual right of recovery against them. However, as we recognized in *Yorgan,* disciplinary cases may be based in factual contexts similar to those on which civil actions are based.[1] In addition, the factual context in which *Yorgan* arose is on all fours with the facts related by the referee

---

[1] *Yorgan v. Durkin,* 2006 WI 60, ¶ 22, 290 Wis. 2d 671, 715 N.W.2d 160 (citing *In the Matter of Allen,* 802 N.E.2d 922, 924 (Ind. 2004) and *Matter of Rawson,* 833 P.2d 235, 238 (N.M. 1992)), two disciplinary cases, as support for the court's conclusion that Dr. Yorgan should have had Attorney Durkin sign a

as a precursor to his conclusion that Attorney Barrock violated SCR 20:1.15(d)(3).[2]

¶ 63. Dr. Yorgan is a chiropractor who provided chiropractic services to Ms. Hernandez for personal injuries that resulted from an automobile accident. *Yorgan,* 290 Wis. 2d 671, ¶ 53. Because Ms. Hernandez was not able to pay for the health care she required, Ms. Hernandez made a written assignment to Dr. Yorgan of proceeds that may be received from her personal injury claim. That agreement provided:

> I hereby authorize and direct you, my attorney, to pay directly to Dr. Yorgan such sums as may be due and owing him for health services rendered to me by reason of this accident and to withhold such sums from any settlement, judgement [sic] or verdict as may be necessary to protect his interests.

*Id.,* ¶ 56.

¶ 64. Attorney Durkin represented Ms. Hernandez in her civil claim for the same accident that resulted in the personal injuries for which Dr. Yorgan provided treatment. *Id.,* ¶ 53. Moreover, the circuit court found that Ms. Hernandez's written assignment was sent to Attorney Durkin's office at the time Dr. Yorgan transmitted Ms. Hernandez's treatment records that Attorney Durkin had requested, about November 1, 2000. *Id.,* ¶ 57. The circuit court also found that Attorney Durkin settled Ms. Hernandez's personal injury claim

---

letter of protection, if Dr. Yorgan expected Attorney Durkin to protect Dr. Yorgan's interest in the settlement proceeds.

[2] Many of the facts I quote come from the dissent in *Yorgan.* However, the majority opinion in *Yorgan* did not dispute that Attorney Durkin knew that Dr. Yorgan made a claim to the settlement proceeds from Ms. Hernandez's personal injury claim based on the written agreement he sent to Attorney Durkin. *See Yorgan,* 290 Wis. 2d 671, ¶ 1.

about June, 2003, and that prior to reaching a settlement, Attorney Durkin contacted Dr. Yorgan to see if he would reduce the amount then due for chiropractic services. *Id.* When Dr. Yorgan refused to do so, Attorney Durkin paid himself from the settlement proceeds and sent the rest of it to Ms. Hernandez, who was subsequently nowhere to be found. *Id.* There was no evidence in the record that Ms. Hernandez provided Attorney Durkin any instructions about the disbursement of the settlement proceeds to Dr. Yorgan that were contrary to the assignment she executed in favor of Dr. Yorgan. *Id.* Accordingly, Attorney Durkin had notice of an assignment, expressly created by his client. *Id.,* ¶ 1 and ¶ 57.

¶ 65. This court concluded that Attorney Durkin had no obligation to pay Dr. Yorgan from the settlement proceeds Attorney Durkin received because Attorney Durkin did not sign an agreement to do so. *Id.,* ¶ 2. In so concluding, it also concluded that Attorney Durkin had no obligation to retain the disputed funds in his trust account. Accordingly, Dr. Yorgan was denied all recovery for the health care he provided. *Id.,* ¶ 2.

¶ 66. In the disciplinary case now before us, Attorney Barrock is found to have violated SCR 20:1.15(d)(3), which provides in relevant part:

> Disputes regarding trust property. When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved.

¶ 67. Attorney Barrock's violation of SCR 20:1.15(d)(3) arises from a claim made against settle-

ment proceeds by Attorney Hupy, who initially represented Attorney Barrock's client, W.F., for the same personal injury claim for which Attorney Barrock collected settlement proceeds. As part of Attorney Hupy's representation of W.F., W.F. signed a contingency fee agreement whereby Attorney Hupy allegedly would receive 33⅓% of any recovery and would have a lien on the proceeds of the personal injury claim for the payment of that contingency fee.[3] Per curiam op., ¶ 8.

¶ 68. Approximately one year after Attorney Hupy entered into the agreement to represent W.F., W.F. decided to retain Attorney Barrock. *Id.,* ¶ 9. As part of Attorney Barrock's representation of W.F., W.F. also entered into a retainer agreement with Attorney Barrock. *Id.,* ¶ 11.

¶ 69. When Attorney Hupy became aware of Attorney Barrock's representation, he asked Attorney Barrock to acknowledge Attorney Hupy's lien against proceeds received in the future from W.F.'s personal injury claim. *Id.,* ¶ 14.

---

[3] The fee agreement between Attorney Hupy and W.F. is not a part of the record before this court. Therefore, because statutory liens under Wis. Stat. § 757.37 do not arise as a matter of course, we do not know whether Attorney Hupy's agreement actually granted him a statutory lien. *See Weigel v. Grimmett,* 173 Wis. 2d 263, 271, 496 N.W.2d 206 (Ct. App. 1992) (concluding that even with a written fee agreement there must be separate proof of an agreement for a lien); *see also In the Matter of Richland Bldg. Sys., Inc.,* 40 B.R. 156, 157 (Bankr. W.D. Wis. 1984) (concluding that a written fee agreement was insufficient to support an attorney's lien because there was no specific proof of the granting of the lien). However, in my view, the basis for the claim against settlement proceeds makes no difference in regard to whether SCR 20:1.15(d)(3) applies because the Rule covers disputes that arise because of a claimed "lien, court order, judgment, or contract."

¶ 70. Attorney Barrock did not do so. *Id.,* ¶ 15. Attorney Barrock continued to, represent W.F. and obtained a settlement of $34,135. *Id.,* ¶ 16. However, he paid Attorney Hupy nothing, but distributed the proceeds to himself, to his father, who was also an attorney, and to W.F. *Id.* When Attorney Hupy learned that a distribution had been made, he sued Attorney Barrock and also reported Attorney Barrock's actions to OLR. *Id.,* ¶ 22.

¶ 71. The referee's conclusion of law, that was adopted by this court in its disciplinary decision, determined that:

> Attorney Barrock failed to hold in his Trust Account a portion of the settlement he had negotiated with Omni Insurance Company despite his actual knowledge of a dispute regarding Attorney Hupy's firm's lien as to a portion of those funds. This is a direct violation of SCR 20:1.15(d).

¶ 72. I write dissenting in part because the attorney conduct in *Yorgan* is the same as Attorney Barrock's conduct here. Both attorneys knew another person claimed an interest in settlement proceeds that came into their hands. This knowledge caused the settlement funds that each attorney deposited into his trust account to be subject to a dispute about the ownership of those funds, which would appear to cause each attorney's conduct to fall within the ambit of SCR 20:1.15(d)(3). However, it appears to me that *Yorgan* put a gloss on when a portion of settlement proceeds is in "dispute." That is, this court concluded that Attorney Durkin was not bound to retain the settlement proceeds from Ms. Hernandez's lawsuit because he had not signed an agreement to be bound by the contractual assignment Ms. Hernandez made to Dr. Yorgan. *Yorgan,*

231

290 Wis. 2d 671, ¶ 2. We also concluded that the failure to pay Dr. Yorgan did not violate public policy. *Id.* If Attorney Durkin was not bound to retain the settlement proceeds in his trust account, under law or public policy until a court had determined whether Dr. Yorgan had a valid claim against the proceeds, then how could those proceeds be in "dispute" under SCR 20:1.15(d)(3), which requires retaining them when a dispute is present?

¶ 73. The concurrence asserts that the dissent "conflates" Attorney Hupy's OLR complaint with his civil claim. Per curiam op., ¶ 39 (Abrahamson, C.J., concurring). The concurrence then goes on to assert that the "crux" of this disciplinary action is that a lawyer released trust account funds to which he knew another lawyer claimed an interest, while the "crux" of a civil action is a court determination of whether a claimant has a valid claim to the funds. *Id.,* ¶ 41.

¶ 74. While I acknowledge that the focus is different in the two actions, does the concurrence really believe a disciplinary action will lie against Attorney Durkin in the *Yorgan* matter after we have determined that Attorney Durkin properly ignored Dr. Yorgan's claim to a portion of the trust account funds? The court did conclude that Attorney Durkin's distribution did not violate any rights of Dr. Yorgan and did not violate public policy. *Yorgan,* 290 Wis. 2d 671, ¶ 2. Certainly, the Supreme Court Rules contained in SCR ch. 20 are grounded in public policy. To me, the OLR case and the civil action, while having differing focuses, should not result in public policy conclusions that are inconsistent with one another.

¶ 75. In summary, in this disciplinary action, it was an attorney who claimed an interest in the funds in an attorney's trust account. In *Yorgan,* it was a chiro-

practor who claimed an interest in the funds in an attorney's trust account. In my view before this court's decision in *Yorgan,* it did not matter whether the interest claimed was grounded in a common law lien, a statutory lien or a contract assigning a portion of the proceeds to another. The terms of SCR 20:1.15(d)(3) covered all such claims if they showed the proceeds were in "dispute." However, in *Yorgan,* we concluded that the distribution of all of the settlement proceeds to others violated no law and was not contrary to public policy. *Id.*

¶ 76. Therefore, the court's determination in *Yorgan* put a gloss on what type of claim can be made against trust account proceeds, which gloss affects this case. To explain further, I cannot agree that it is not contrary to public policy to distribute trust account funds to which a chiropractor makes a claim, but it is contrary to public policy to distribute trust account funds to which an attorney makes a claim. Therefore, I conclude Attorney Barrock did not violate SCR 20:1.15(d)(3). Accordingly, I respectfully dissent from that portion of the discipline imposed for a violation of SCR 20:1.15(d)(3), and I would remand the matter to the referee to make a recommendation about discipline that does not include a finding that Attorney Barrock violated SCR 20:1.15(d)(3) under the facts of this case.