# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2414-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Gregory M. Lunde, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant,<br>   v.<br>Gregory M. Lunde,<br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST LUNDE

| | |
|---|---|
| OPINION FILED: | October 18, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP2414-D

STATE OF WISCONSIN       :       IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Gregory M. Lunde, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

    **v.**

**Gregory M. Lunde,**

      **Respondent.**

**FILED**

**OCT 18, 2016**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.  We review the report and recommendation of Referee James G. Curtis approving a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Gregory M. Lunde. In the stipulation, Attorney Lunde stipulated to the facts underlying five counts of misconduct alleged in the OLR's complaint and agreed that the referee could enter conclusions of law finding that Attorney Lunde violated the various Supreme Court Rules as set forth in the complaint.  The parties jointly

recommended that the appropriate sanction to be imposed is a 60-day suspension of Attorney Lunde's license to practice law in Wisconsin. The referee agreed that a 60-day suspension was appropriate.

¶2 After careful review of the matter, we uphold the referee's findings of fact and conclusions of law and agree that a 60-day suspension is an appropriate sanction. We further find it appropriate to impose the full costs of this proceeding, which are $1,357.73 as of August 1, 2016, on Attorney Lunde.

¶3 Attorney Lunde was admitted to practice law in Wisconsin in 1981. He resides in Westby, Wisconsin. Effective April 12, 2016, Attorney Lunde ceased actively practicing law due to health reasons. He has no present intention to recommence the active practice of law.

¶4 Attorney Lunde's prior disciplinary history consists of a consensual public reprimand imposed by the OLR's predecessor, the Board of Attorneys Professional Responsibility (BAPR), for failing to provide competent representation to a client, failing to act with reasonable diligence and promptness in representing a client, and failing to cooperate with BAPR's investigation. Public Reprimand of Gregory M. Lunde, 1992-3, (electronic copy available at https://compendium.wicourts.gov/app/raw/000297.html).

¶5 The OLR filed a complaint against Attorney Lunde on November 25, 2015. Attorney Lunde filed an answer on December 30, 2015. The referee was appointed on March 24, 2016. The parties' stipulation was filed on July 15, 2016.

2

¶6 According to the stipulation, on June 3, 2001, J.S., a single person and resident of rural Westby, Wisconsin, died intestate. J.S. was survived by two minor children, D.B., age 14, and Z.S., age 7. On or about June 9, 2001, Attorney Lunde met with James DelMedico (DelMedico), an officer of a bank, regarding the need to probate J.S.'s estate.

¶7 On January 30, 2002, Attorney Lunde filed an Application for Informal Administration of the estate, signed by DelMedico as the applicant, in Vernon County Circuit Court. The court issued letters appointing DelMedico personal representative of the estate on January 30, 2002. DelMedico contacted Attorney Lunde and requested that he serve as the attorney for the estate.

¶8 At the time of her death, J.S. was enrolled in a group life insurance plan sponsored by her employer, with insurance coverage issued by Metropolitan Life Insurance Company (Met Life). J.S.'s minor children were entitled to equal shares in the death benefit payable under the Met Life plan.

¶9 On January 8, 2004, Attorney Lunde filed a petition and affidavit in the probate matter asking the court to issue an order directing Met Life to transfer the life insurance proceeds to his trust account. The circuit court granted the petition on January 12, 2004 and issued an order directing Met Life to release the funds to Attorney Lunde's trust account. The court's order required that the balance of funds received from Met Life, after payment of any outstanding debts, be retained in Attorney Lunde's trust account until further order of the court.

3

¶10 On November 18, 2004, Attorney Lunde sent a letter to the court saying that the J.S.'s estate had a credit balance of $12,668.54 to be divided equally between J.S.'s minor children.

¶11 In 2012, after he was 18 years of age, Z.S. asked his aunt, S.D., to assist him in obtaining the funds to which he was entitled from his mother's estate. S.D. subsequently called Attorney Lunde's office twice during the week of July 23, 2012 and left messages with a secretary. S.D. left a third message on the office voicemail saying she was planning a trip to Viroqua on July 30. Attorney Lunde did not return the calls.

¶12 On the morning of July 30, 2012, S.D. spoke with the Register in Probate for Vernon County about Z.S's funds. While S.D. was present in the office, the Register in Probate called Attorney Lunde and told him that S.D. wanted to see him. Attorney Lunde said he did not have time and asked for S.D.'s phone number. Despite obtaining the phone number, Attorney Lunde did not call S.D.

¶13 During August and September 2012, S.D. called Attorney Lunde's office several more times to inquire about Z.S.'s funds. Each time Attorney Lunde's secretary either took a message, or S.D. left a voice mail message. Attorney Lunde never returned any of the calls.

¶14 On November 29, 2012, the OLR sent Attorney Lunde a letter informing that a grievance had been filed against him regarding the money he had received in trust from Met Life in the J.S. estate matter. After Attorney Lunde failed to respond to the November 29, 2012, letter the OLR sent two more letters,

4

with the final one being personally served upon him by the Viroqua Police Department. Attorney Lunde failed to respond to any of the letters.

¶15 On March 5, 2013, this court issued an order to Attorney Lunde to show cause why his license to practice law should not be suspended for his willful failure to cooperate with the OLR's investigation. Attorney Lunde failed to respond to the court order and on May 13, 2013, this court issued an order temporarily suspending Attorney Lunde's license to practice law. The OLR subsequently reported to the court that Attorney Lunde was cooperating in the investigation of the grievance, and on June 5, 2013, this court issued an order reinstating Attorney Lunde's license.

¶16 On July 10, 2013, Attorney Lunde told the OLR he had been unable to locate his trust account transaction register regarding the J.S. estate and that he had been unable to access information related to his trust account. Attorney Lunde also told the OLR he assumed there were sufficient funds in the account to release to Z.S. He said he contacted the bank and was informed his trust account was frozen and that the bank would not provide him with any other information about the account.

¶17 On August 12, 2013, the OLR received records from the Wisconsin Trust Account Foundation, Inc. (WisTAF) in response to a subpoena. The records revealed that on July 5, 2000, Attorney Lunde had opened his trust account with Fortress Bank and in 2007 Fortress Bank merged into Lincoln State Bank. In 2008,

5

Lincoln State Bank merged into Harris National Association, now known as BMO Harris Bank, N.A. The earliest records obtained by the subpoena showed the balance in Attorney Lunde's trust account was $1,937.30 as of November 12, 2007. The records showed no activity in the trust account since that date.

¶18 Attorney Lunde has no monthly statements or records relating to the trust account and cannot explain why the amount of funds in the account as of November 12, 2007 was less than the amount of funds belonging to Z.S., which the circuit court's January 12, 2004 order had required Attorney Lunde hold in trust until further order of the court. Attorney Lunde asserts that the trust account balanced and that the funds were in his account at the time he closed his business in May 2007 to become the Vernon County Corporation Counsel.

¶19 By a letter to the OLR dated June 6, 2014, Attorney Lunde confirmed that he had not released to Z.S. the funds that Attorney Lunde was required to hold in trust pursuant to the circuit court's January 12, 2004 order. Attorney Lunde stated he would pay Z.S. the funds to which he was entitled upon confirmation of Z.S.'s identity.

¶20 Z.S. contacted Attorney Lunde by telephone on December 12, 2014, and on December 19, 2014, Attorney Lunde issued a check to Z.S. in the amount of $6,334.27, representing one-half (after expenses), of the funds Attorney Lunde had received from Met Life. The check was drawn on Attorney Lunde's personal account at WCCU Credit Union. The check cleared.

6

¶21 In the stipulation, the parties agreed that the referee could enter the following conclusions of law:

[Count 1] By failing to promptly pay Z.S. his portion of his mother's life insurance, [Attorney] Lunde violated SCR 20:1.15(d)(1).[1]

[Count 2] By failing to keep the funds due and owing to Z.S. in his trust account, [Attorney] Lunde violated SCR 20:1.15(b)(1).[2]

[Count 3] By failing to keep the remaining balance of the insurance proceeds in his trust account pending

---

[1] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

SCR 20:1.15(d)(1) provides:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[2] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

further order of the circuit court, [Attorney] Lunde violated SCR 20:3.4(c).[3]

[Count 4] By maintaining a trust account balance that fell below the amount of funds received and to be held on behalf of Z.S., [Attorney] Lunde converted at least a portion of E.S.'s money in violation of SCR 20:8.4(c).[4]

[Count 5] By failing to respond to the OLR's November 29, 2012, January 16, 2013 and February 12, 2013 investigative letters, [Attorney] Lunde violated SCR 22.03(2) and 22.03(6), enforced via SCR 20:8.4(h).[5]

¶22 As noted above, the parties also agreed that an appropriate level of discipline for Attorney Lunde's misconduct was a 60-day suspension of his license to practice law in Wisconsin. The referee agreed.

¶23 The referee's July 21, 2016 report and recommendation found that the OLR met its burden of proof with respect to the five counts of misconduct identified above. The referee noted that the misconduct in this case arose from Attorney Lunde's apparent failure to properly close his private law practice in 2007 when he accepted employment as the Vernon County

---

[3] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(6), or SCR 22.04(1)."

Corporation Counsel. The referee noted that the stipulation did not say that Attorney Lunde failed to make a proper trust account payment to J.S's older child, D.B., when he turned 18 in 2005. The referee opined that a proper reconciliation of the trust account at the time Attorney Lunde closed his private law practice would have avoided the problems that occurred here.

¶24 The referee found that the case presented both aggravating and mitigating factors. As to aggravating factors, the referee noted that when Z.S. turned 18 in 2012 and first made inquiries about the funds, Attorney Lunde's conduct resulted in a delay of more than two years before the funds were finally paid to Z.S. In addition, the referee said that Attorney Lunde's failure to cooperate and respond to the OLR's various inquiries was flagrant and required unnecessary efforts on the OLR's part.

¶25 As to mitigating factors, the referee again noted that the OLR did not contend that Attorney Lunde failed to make a proper trust account payment to D.B. when he turned 18 in 2005. The referee said that although the payment to Z.S. was delayed, Attorney Lunde did make full restitution of the proper amount, presumably out of his personal funds. The referee noted that Attorney Lunde ceased the active practice of law due to health reasons in April 2016 and has no present intention of resuming the active practice of law. The referee also noted that although Attorney Lunde did previously receive a consensual public reprimand, he has not been the subject of further discipline for more than 20 years.

9

¶26 The referee agreed that a 60-day suspension was an appropriate sanction for Attorney Lunde's misconduct. The referee noted that a 60-day suspension was ordered by this court in the recent case of In re Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881. After Attorney Bartz settled a personal injury claim, there was an outstanding chiropractic bill. The settlement statement required Attorney Bartz to hold funds in trust while he tried to negotiate a lower payment on the bill. Although an agreement was promptly reached, Attorney Bartz subsequently disbursed six trust account checks payable to himself, leaving no funds in trust attributable to either the chiropractic bill or the balance owed to the client. This court approved a stipulation by the parties which called for a 60-day license suspension.

¶27 The referee in this matter opined that Attorney Bartz's misconduct was much more egregious than the conduct of Attorney Lunde in that Attorney Bartz intentionally misappropriated monies held in trust by disbursing checks payable to himself. The referee said there were no facts of record establishing that Attorney Lunde intentionally disbursed trust account checks payable to himself. Rather, based on the stipulated facts, the referee said Attorney Lunde's misconduct appeared to involve neglect and sloppiness rather than true misappropriation. The referee concluded that a 60-day suspension was warranted.

¶28 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are

10

reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶29 We adopt the referee's findings of fact and conclusions of law that Attorney Lunde violated the Supreme Court Rules as alleged in the five counts set forth above. We also agree with the referee that a 60-day suspension of Attorney Lunde's license to practice law in Wisconsin is appropriate. In addition to the Bartz case, we note that a 60-day suspension was also imposed in In re Disciplinary Proceedings against Barrock, 2007 WI 24, 299 Wis. 2d 207, 727 N.W.2d 833 (six counts of misconduct arising out of attorney's failure to hold settlement funds subject to third-party claim in trust account) and In re Disciplinary Proceedings Against Riegleman, 2003 WI 3, 259 Wis. 2d 1, 657 N.W.2d 339 (three counts of misconduct arising out of attorney's failure to notify lienholder of settlement and unauthorized endorsement of settlement check). We find the misconduct at issue here to be generally analogous. We also find it appropriate, as is our usual custom, to impose the full costs of this disciplinary proceeding on Attorney Lunde.

¶30 IT IS ORDERED that the license of Gregory M. Lunde to practice law in Wisconsin is suspended for a period of 60 days, effective the date of this order.

¶31 IT IS FURTHER ORDERED that within 60 days of the date of this order, Gregory M. Lunde shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $1,357.73.

¶32 IT IS FURTHER ORDERED that Gregory M. Lunde shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶33 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).